**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| BENCIVENGA CORPORATION D/B/A OFM CORPORATION<br><br>*Plaintiff,*<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, *et al.*,<br><br>*Defendants.* | No. 4:23-CV-3887 |

## <u>DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION</u>

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF THE ARGUMENT ...............................................1

NATURE AND STAGE OF THE PROCEEDING ...............................................................1

STATEMENT OF THE ISSUES ...........................................................................................2

BACKGROUND ....................................................................................................................3

I.      Statutory and Regulatory Background.........................................................................3

II.     Relevant Parties ..........................................................................................................4

III.    This Lawsuit.................................................................................................................6

ARGUMENT..........................................................................................................................6

I.      Plaintiff cannot demonstrate a likelihood of success on the merits. ..........................7

        A.      OFM has failed to carry its burden to demonstrate a likelihood of success..................7

        B.      OFM is not likely to succeed on its claims. ......................................................8

                1.      Violations Related to Alan Aronstein ................................................9

                        i.      Aronstein is a "responsible person." ........................................9

                        ii.     Aronstein is not eligible to serve as a "responsible person"
                                for an FFL. ..........................................................................13

                        iii.    ATF was authorized to revoke OFM's license for three
                                violations................................................................................14

                2.      Remaining Violations ........................................................................16

                3.      Willfulness.........................................................................................18

II.     Plaintiff has failed to make a showing of irreparable harm.......................................18

III.    The balance of the equities and the public interest favor Defendants......................21

CONCLUSION......................................................................................................................23

**TABLE OF AUTHORITIES**

**CASES**

*2nd Amend. Guns, LLC v. ATF*,
   No. 1:13-CV-01947, 2014 WL 7051753 (D. Or. Dec. 12, 2014) ..........................................13-14, 15

*Anibowei v. Morgan*,
   70 F.4th 898 (5th Cir. 2023)...........................................................................................................19

*Baker v. Collier*,
   No. 6:20-CV-50, 2020 WL 4500305 (S.D. Tex. Aug. 5, 2020) .............................................7

*BioTE Med., LLC v. Jacobsen*,
   406 F. Supp. 3d 575 (E.D. Tex. 2019)................................................................................. 19, 20

*Butts v. Aultman*,
   953 F.3d 353 (5th Cir. 2020) ........................................................................................................18

*CAE Integrated, L.L.C. v. Moov Techs., Inc.*,
   44 F.4th 257 (5th Cir. 2022)..........................................................................................................18

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
   ---F. Supp. 3d---, 2023 WL 4291992 (W.D. Tex. June 30, 2023),
   *injunction granted pending appeal*, 2023 WL 9864371 (5th Cir. Aug. 7, 2023) .............................19, 20, 21

*City of Rochester v. Bond*,
   603 F.2d 927 (D.C. Cir. 1979) ......................................................................................................9

*Clarke v. Commodity Futures Trading Comm'n*,
   74 F.4th 627 (5th Cir. 2023)..........................................................................................................21

*Crusader Gun Grp., LLC v. James*,
   No. 4:22-CV-00906, 2023 WL 6194039 (S.D. Tex. Aug. 17, 2023),
   *appeal filed*, No.  23-20449 (5th Cir. Sept. 18, 2023) .............................................................*passim*

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
   710 F.3d 579 (5th Cir. 2023) ........................................................................................................7

*Domain Prot., LLC v. Sea Wasp, LLC*,
   No. 4:18-CV-792, 2019 WL 3219939 (E.D. Tex. July 17, 2019)...................................... 7-8

*EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*,
   467 F.3d 466 (5th Cir. 2006) ........................................................................................................6

*Fairmont Cash Mgmt., L.L.C. v. James*,
   858 F.3d 356 (5th Cir. 2017) .............................................................................................4, 9, 18, 21

*Gossard v. Fronczak,*
   206 F. Supp. 3d 1053 (D. Md. 2016) ....................................................................................10

*Heartland Outdoor, Inc. v. Miller,*
   No. 23-CV-1182, 2023 WL 6376751 (D. Kan. Sept. 29, 2023)..............................................19, 21, 22

*Janvey v. Alguire,*
   647 F.3d 585 (5th Cir. 2011) ....................................................................................7

*Jarkesy v. SEC,*
   803 F.3d 9 (D.C. Cir. 2015)....................................................................................8

*Lake Charles Diesel, Inc. v. Gen. Motors Corp.,*
   328 F.3d 192 (5th Cir. 2003) ....................................................................................19

*Magee v. BSN Sports, LLC,*
   No. 3:21-CV-01726-G-BT, 2022 WL 3701627 (N.D. Tex. Aug. 8, 2022),
   *report and recommendation adopted,* 2022 WL 3702035 (N.D. Tex. Aug. 26, 2022) ...............................................6

*Mazurek v. Armstrong,*
   520 U.S. 968 (1997) .................................................................................... 1, 7

*Mock v. Garland,*
   75 F.4th 563 (5th Cir. 2023)....................................................................................21

*Morehouse Enters., LLC v. ATF,*
   78 F.4th 1011 (8th Cir. 2023)....................................................................................20

*Multilift Wellbore Tech. Ltd. v. ESP Completion Techs. LLC,*
   No. 2:16-CV-1187, 2017 WL 10222420 (E.D. Tex. July 25, 2017) ....................................................21

*Nichols v. Alcatel USA, Inc.,*
   532 F.3d 364 (5th Cir. 2008) ....................................................................................8

*Nken v. Holder,*
   556 U.S. 418 (2009) ....................................................................................21

*Paducah Shooters Supply, Inc. v. Rogers,*
   ---F. Supp. 3d---, 2023 WL 5769364 (W.D. Ky. Aug. 12, 2023) ....................................................19, 22

*Posey v. Garland,*
   No. 1:23-CV-00051, 2023 WL 5435609 (E.D. Tenn. Aug. 23, 2023) ....................................................20, 22

*Rogers v. Caswell,*
   No. 5:18-CV-181-BQ, 2018 WL 11202182 (N.D. Tex. Oct. 5, 2018) ....................................................8

*RSM, Inc. v. Herbert,*
   466 F.3d 316 (4th Cir. 2006)....................................................................................21

iii

*Semon v. Holder*,
    No. 4:09-CV-590, 2010 WL 715580 (E.D. Tex. Feb. 19, 2010).........................................................20

*Sepulvado v. Jindal*,
    729 F.3d 413 (5th Cir. 2013)...........................................................................................................7

*Streicher's, Inc. v. Hummel*,
    No. 23-CV-995, 2023 WL 3018680 (D. Minn. Apr. 20, 2023)...........................................19

*Tactical Edge, LLC v. Garland*,
    ---F. Supp. 3d---, 2023 WL 6393175 (M.D. Tenn. Sept. 29, 2023)....................................21

*Texas v. U.S. EPA*,
    662 F. Supp. 3d 739 (S.D. Tex. 2023)..............................................................................20

*TransPerfect Translations, Inc. v. Leslie*,
    594 F. Supp. 2d 742 (S.D. Tex. 2009).......................................................................19, 20

*United States v. Dunkel*,
    927 F.2d 955 (7th Cir. 1991)...........................................................................................7

*United States v. King*,
    735 F.3d 1098 (9th Cir. 2013)........................................................................................10

*Van Dyke v. Retzlaff*,
    No. 4:18-CV-247, 2020 WL 1693023 (E.D. Tex. Apr. 7, 2020)....................................7, 8

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)...................................................................................................6, 19, 21

## STATUTES

18 U.S.C. §§ 921 *et seq.*...................................................................................................3

18 U.S.C. § 922.........................................................................................................5, 16

18 U.S.C. § 923...................................................................................................*passim*

18 U.S.C. § 924....................................................................................................5, 9, 14

## RULES

Fed. R. Civ. P. 65 ...........................................................................................................2

## REGULATIONS

27 C.F.R. § 478.54..................................................................................................5, 9, 15

27 C.F.R. §§ 478.71–78 ....................................................................................................4

27 C.F.R. § 478.73................................................................................................3, 5, 9, 15

27 C.F.R. § 478.74................................................................................................ 3, 4

27 C.F.R. § 478.99................................................................................................ 5, 16

27 C.F.R. § 478.123.............................................................................................. 5, 16

27 C.F.R. § 478.124..............................................................................................5, 16, 17

27 C.F.R. § 478.128..............................................................................................5, 9, 14

28 C.F.R. § 0.130.................................................................................................3

Hearing Procedures Relating to Federal Firearms Licenses (2010R-2T),
   75 Fed. Reg. 48,362 (Aug. 10, 2010)...............................................................4

**OTHER AUTHORITIES**

11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948 (2d ed. 1995) ...............7

ATF, *Firearms Compliance Inspections*,
   https://perma.cc/AY7F-WUNG................................................................ 3, 11

ATF, *Revocation of Firearms Licenses*,
   https://perma.cc/9FTZ-JG48................................................................ 3, 4

**INTRODUCTION AND SUMMARY OF THE ARGUMENT**

In this case, the Court will determine whether ATF was authorized to revoke Plaintiff OFM's ("OFM") federal firearms license. But OFM attempts to accelerate that statutory review process by seeking a preliminary injunction allowing it to remain in business during this litigation. The Court should deny OFM's motion because OFM has failed to make a "clear showing" that (1) it has a substantial likelihood of success on the merits, (2) it will suffer irreparable harm without the requested injunction, (3) the balance of equities tips in its favor, and (4) preliminary relief serves the public interest. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

OFM is unlikely to succeed on the merits of its claim because ATF was authorized to revoke OFM's license for any one of six willful violations of the Gun Control Act ("GCA"). Most notably, in issuing a final notice of revocation, ATF credited substantial evidence showing that Alan Aronstein was an unlisted responsible person for OFM, despite the fact that Aronstein is prohibited by law from serving in that capacity as a prior willful violator of the GCA. ATF considered evidence showing that Aronstein conducted all firearms transactions for OFM, purchased firearms for OFM, leased OFM's business premises, and was responsible for OFM's employee payroll. OFM also operated out of the same location and employed the same staff as Aronstein's former firearms business. Aronstein's prior violations are thus attributable to OFM, and OFM has willfully violated the GCA.

The remaining factors also weigh against granting Plaintiff a preliminary injunction. OFM has failed to carry its burden of clearly demonstrating that it will suffer irreparable harm absent preliminary relief. And both the balance of the equities and the public interest weigh in favor of ensuring that ATF can effectively enforce the GCA's provisions against willful violators like OFM.

**NATURE AND STAGE OF THE PROCEEDING**

OFM filed the present action on October 12, 2023, bringing ten purported claims in an attempt to preempt ATF's administrative proceedings. *See* Compl., ECF No. 1. OFM filed its first

motion for a temporary restraining order on October 19, 2023, requesting that the Court enjoin Defendants from proceeding with OFM's license revocation hearing. *See* Mot. for TRO, ECF No. 11. After a hearing, the Court denied OFM's motion.

OFM filed an amended complaint on February 6, 2024, adding a challenge to ATF's revocation to its existing, lengthy complaint. *See* First Am. Compl., ECF No. 31 ("FAC"). OFM's complaint seeks *de novo* judicial review of the denial of its application for a federal firearms license pursuant to 18 U.S.C. § 923(f)(3). *Id.* ¶ 353. On February 14, 2024, Plaintiff filed a second motion for a temporary restraining order, ECF No. 33, requesting that the Court order ATF to "stay" the revocation of OFM's license. On February 16, 2024, the parties filed a joint notice and motion to advise the Court of recent developments and propose a schedule for future proceedings. Joint Notice and Mot., ECF No. 35. ATF agreed to partially stay the revocation order with respect to dispositions and repair only, and OFM withdrew its motion for a temporary restraining order.[1]

OFM filed the instant motion for a preliminary injunction on February 26, 2024. Pl.'s Mot. for Prelim. Inj., ECF No. 37 ("Mot."); Pl.'s Mem. ISO Mot. for Prelim, Inj., ECF No. 37-1 ("Mem."). OFM requests that the Court enjoin Defendants from enforcing the Final Notice while this case is decided. *See* Mem. ¶ 29; FAC ¶ 348

## STATEMENT OF THE ISSUES

Whether OFM has met its burden of showing that it is entitled to a preliminary injunction under Fed. R. Civ. P. 65.

---

[1] This means that OFM may sell existing inventory and continue to repair firearms but may not manufacture or acquire firearms for sale. Should OFM manufacture or acquire firearms for sale, the partial stay immediately terminates.

**BACKGROUND**

**I.    Statutory and Regulatory Background**

The GCA, codified at 18 U.S.C. §§ 921 *et seq.*, gives the Attorney General the authority to approve federal firearm licenses and provides that "[n]o person shall engage in the business of importing, manufacturing, or dealing in firearms . . . until he has filed an application with and received a license to do so from the Attorney General." *Id.* § 923(a). Additionally, ATF "may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by [ATF] under this chapter." *Id.* § 923(e).

ATF also has authority to periodically inspect federal firearms licensees ("FFLs") for compliance with the GCA's requirements. *Id.* § 923(g)(1)(B)(ii)(I); 28 C.F.R. § 0.130(a). ATF's industry operations investigators ("IOIs") inspect FFLs to ensure compliance with applicable laws and regulations. ATF, *Firearms Compliance Inspections*, https://perma.cc/AY7F-WUNG. Typically, an inspecting IOI will arrive at an FFL during business hours and will review its business operations, evaluate internal controls, verify the FFL's compliance with applicable laws, review the FFL's records, and inventory the FFL's firearms, among other things. *Id.* If the IOI detects violations, they will create a final report of violations and discuss that report with the FFL.

"Whenever the Director has reason to believe that a licensee has willfully violated any provision of the Act" a notice of revocation of the license may be issued.  27 C.F.R. § 478.73(a). The FFL then has 15 days after receipt of the notice to request a hearing with the Director of Industry Operations ("DIO") in their ATF field division. *Id.* § 478.73(b); 18 U.S.C. § 923(f)(2). "During the hearing the licensee will have the opportunity to submit facts and arguments[.]" 27 C.F.R. § 478.74. "[T]he licensee can be represented by an attorney and may bring employees and documentation to address the violations cited in the notice." ATF, *Revocation of Firearms Licenses*, https://perma.cc/9FTZ-

3

JG48. A licensee also has "the right to question," *i.e.*, cross-examine, "all witnesses" at the hearing. FAC Ex. 11 at 3, ECF No. 31-11. "If the DIO decides that the violations were willful and revocation is justified, . . . ATF sends a final notice of revocation . . . to the licensee with a summary of the findings and legal conclusions[.]" *Revocation of Firearms Licenses*; 27 C.F.R. § 478.74; 18 U.S.C. § 923(f)(3); *see also id.* § 923(e) (summarizing procedure for revocation).[2]

Only if ATF sends a final notice of revocation following a hearing may the license holder seek "de novo judicial review of such . . . revocation" in federal district court to determine whether ATF was "authorized to . . . revoke the license." 18 U.S.C. § 923(f)(3); *see also, e.g.*, *Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 363 (5th Cir. 2017).

## II.    Relevant Parties

Plaintiff OFM is a Texas corporation that holds an active federal firearms license first issued in 2003. FAC ¶ 3. On July 12, 2022, an Industry Operations Investigator with ATF attempted to conduct a compliance inspection at OFM. Defs.' Ex. A, Final Notice of Revocation at 4. OFM's president and sole listed responsible party, Ramiro Romo, told the investigator "that [Alan] Aronstein runs the show." *Id.* Romo indicated that Aronstein conducted all firearms transactions for OFM. *Id.* Romo told the investigator that ATF would have to return when Aronstein was present. *See id.*

Aronstein was known to ATF because he was the responsible person for Crusader Gun Group, which operates at the same address as OFM. *Id.* at 4-5. OFM subleases its office space from

---

[2] OFM misconstrues a 2010 General Notice regarding procedures at revocation hearings as a binding agency rule, FAC ¶¶ 163–68, 303 (quoting Hearing Procedures Relating to Federal Firearms Licenses (2010R-2T), 75 Fed. Reg. 48,362 (Aug. 10, 2010)), and incorrectly states that this General Notice reflects current ATF revocation procedures.  Regulations regarding ATF revocation proceedings are set out at 27 C.F.R. §§ 478.71–78, and the 2010 General Notice procedures are no longer operative. As the Notice explains, it was intended to advise parties of the "current procedures" as of 2010, 75 Fed. Reg. at 48,362, and such procedures were later amended. As just one example, the "hearing officers" described in the 2010 Notice no longer exist; as a general matter, the "Director of Industry Operations" for a licensee's field division conducts revocation hearings.  *See* 27 C.F.R. § 478.74; *Revocation of Firearms Licenses* (similar).

4

Crusader Gun Group. *Id.* at 5. Aronstein is ineligible to be a responsible person because he was the sole responsible person for three prior firearms businesses who were found to have willfully committed thousands of violations of the GCA. *Crusader Gun Grp., LLC v. James*, No. 4:22-CV-00906, 2023 WL 6194039, at *1 (S.D. Tex. Aug. 17, 2023), *appeal filed*, No. 23-20449 (5th Cir. Sept. 18, 2023). Based on its association with Aronstein, Crusader was denied a federal firearms license a few years ago, a decision that another court in this district upheld in 2023. *Id.*

ATF returned to conduct its inspection on August 18, 2022. Following that inspection, in June 2023, ATF notified OFM that its license "may be revoked" because OFM had purportedly committed eight willful violations of firearms laws. Defs.' Ex. B, Initial Notice of Revocation at 2–3. Specifically, ATF cited the following violations:

(1) On two occasions, OFM knowingly made a false statement or representation in applying for a license by failing to disclose that one Alan Louis Aronstein was a "responsible person" at OFM, in violation of 18 U.S.C. § 924(a)(1) and 27 C.F.R. § 478.128(a).

(2) Aronstein was an unlisted responsible person for OFM, which rendered OFM ineligible for a license under 18 U.S.C. § 923(e) and 27 C.F.R. § 478.73.

(3) OFM did not give timely written notice to ATF when OFM granted Aronstein a position of control in 2018, in violation of 27 C.F.R. § 478.54.

(4) OFM willfully sold a firearm to a person who OFM knew or should have known "was subject to Federal firearms disabilities" in violation of 18 U.S.C. § 922(d) and 27 C.F.R. § 478.99(c).

(5) and (6) OFM violated record-keeping requirements on four occasions in violation of 18 U.S.C. §923(g)(1)(A) and 27 C.F.R. §§ 478.123(a)–(b).

(7) and (8) OFM failed to properly complete or execute ATF Forms 4473 on ten occasions in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(c)(1), (5).

*See id.* at 4.

ATF further notified OFM that it could request a hearing to address the potential revocation of OFM's license and explained that OFM's license would "remain in effect pending the outcome of the hearing." FAC Ex. 1, ECF No. 31-1. OFM requested an administrative hearing, and then sought

5

an extension of the hearing date, which was granted. FAC Ex. 15, ECF No. 31-15. OFM's hearing occurred on November 16, 2023. Defs.' Ex. A at 3. On January 23, 2024, ATF issued its Final Notice revoking OFM's federal firearms license, based on ATF's finding that OFM acted with plain indifference or purposeful disregard to known legal obligations as to violations 1-4, 6, and 8. *Id.* at 10. OFM received that notice on January 29, 2024, FAC ¶ 225, and the revocation became effective on February 13, 2024, Defs.' Ex. A at 2. ATF subsequently agreed to a partial stay of that revocation, which remains in effect. *See* Joint Notice and Mot., ECF No. 35.

### III. This Lawsuit

OFM's Amended Complaint brings twenty-eight purported claims. *See* FAC.[3] Counts I to VIII appear to challenge ATF's allegations in the Initial Notice of Revocation. *Id.* ¶¶ 176–219. Counts IX to XXVI generally challenge ATF's factual findings and legal conclusions in the Final Notice. *Id.* ¶¶ 226–302. Count XXVII appears to seek a declaratory judgment that DIO Tanarra James cannot preside over OFM's revocation hearings under the Administrative Procedure Act ("APA"). *Id.* ¶¶ 303–323. Count XXVIII asserts that the hearing regarding OFM's potential license revocation was a due process violation under the Fifth and Fourteenth Amendments. *Id.* ¶¶ 324–340.

### ARGUMENT

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To justify this "drastic remedy," a plaintiff must make a "clear showing" that it (1) has a substantial likelihood of success on the merits, (2) will suffer irreparable harm without the requested injunction, (3) the balance of equities tips in its favor, and (4)

---

[3] Defendants do not believe the FAC complies with Rule 8, which requires that a plaintiff plead sufficient facts "to provide notice to [a defendant] of the factual basis" for the plaintiff's claims. *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006). Shotgun pleadings, like the FAC, "include irrelevant and unrelated facts such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired." *Magee v. BSN Sports, LLC*, No. 3:21-CV-01726-G-BT, 2022 WL 3701627, at *6 (N.D. Tex. Aug. 8, 2022), *report and recommendation adopted,* 2022 WL 3702035 (N.D. Tex. Aug. 26, 2022).

preliminary relief serves the public interest. *Mazurek*, 520 U.S. at 972 (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948 (2d ed. 1995)).

**I.      Plaintiff cannot demonstrate a likelihood of success on the merits.**

To justify entry of preliminary injunctive relief, a plaintiff must demonstrate a substantial likelihood of success on the merits of its claims. This requires a plaintiff to make out "a prima facie case," *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2023), based on the "standards provided by the substantive law," *Sepulvado v. Jindal*, 729 F.3d 413, 418 (5th Cir. 2013) (quoting *Janvey v. Alguire*, 647 F.3d 585, 596 (5th Cir. 2011)). "Conclusory allegations are insufficient to carry the burden of proof imposed upon persons seeking preliminary injunctive relief." *Van Dyke v. Retzlaff*, No. 4:18-CV-247, 2020 WL 1693023, at *3 (E.D. Tex. Apr. 7, 2020) (citation omitted); *Baker v. Collier*, No. 6:20-CV-50, 2020 WL 4500305, at *1 (S.D. Tex. Aug. 5, 2020) (explaining that "[m]ere conclusory allegations will not suffice" for a likelihood of success on the merits).

**A.  OFM has failed to carry its burden to demonstrate a likelihood of success.**

OFM contends that it has a substantial likelihood of success on its claims regarding the revocation of OFM's federal firearms license. *See* Mem. ¶¶ 17–18. In support of those claims, however, OFM provides only a laundry list of ATF's facts, findings, and legal conclusions with which it disagrees, and in many instances, OFM states simply that "ATF wrongfully accused Plaintiff" of something, or "ATF's allegations . . . are wrongful," with little or no explanation. *See, e.g., id.* ¶ 18; *see also Van Dyke*, 2020 WL 1693023, at *3 ("Plaintiff's motion wholly fails to cite any case law or point to any evidence in the record to establish that he has a substantial likelihood of success."). In a footnote, OFM merely points to its 89-page First Amended Complaint and the hundreds of pages of supporting exhibits. But "[j]udges are not like pigs, hunting for truffles buried in briefs," *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991), and a litigant's failure "to cite to any evidence in the (extensive) record" to support its argument is insufficient to show a likelihood of success. *Domain*

*Prot., LLC v. Sea Wasp, LLC*, No. 4:18-CV-792, 2019 WL 3219939, at *8 (E.D. Tex. July 17, 2019). OFM is seeking extraordinary preliminary relief, and it is accordingly OFM's burden to identify precisely what its claims are and show they are likely to succeed. OFM's "conclusory allegations are not sufficient to carry [its] burden of proof," and the Court should conclude it has "failed to show a substantial likelihood of success on the merits." *Van Dyke*, 2020 WL 1693023, at *3; *see also Rogers v. Caswell*, No. 5:18-CV-181-BQ, 2018 WL 11202182, at *2 (N.D. Tex. Oct. 5, 2018) (finding motion consisting of "mostly conclusory allegations" and "detached, out-of-context references to statutes and case law" failed to demonstrate a likelihood of success). For this reason alone, this Court can and should deny OFM's motion for a preliminary injunction. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008) ("A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." (citation omitted)).

### B. OFM is not likely to succeed on its claims.

Even setting aside OFM's deficient presentation, OFM has no likelihood of success on its claims because ATF's revocation and denial of the renewal of OFM's federal firearms license was authorized under the applicable statutes and regulations.[4]

The exclusive means by which OFM may obtain judicial review of its license revocation is through 18 U.S.C. § 923(f)(3)'s statutory right to *de novo* review in federal district court. *See* Defs.' Opp'n to Pl.'s Mot. for TRO at 6–11, ECF No. 17; *see also Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) ("If a special statutory review scheme exists, however, 'it is ordinarily supposed that Congress

---

[4] The final notice of revocation indicates that after the administrative hearing, OFM filed an application for the renewal of its license, which automatically converted the administrative action from a license revocation to a denial of a license renewal. *See* Defs.' Ex. A at 3 n.1. The final notice indicates that this conversion makes no practical difference. *Id.* Accordingly, this Opposition primarily refers to the administrative action as a license revocation for purposes of consistency with prior filings in this litigation, but may also reference license denials where relevant.

intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies.'" (quoting *City of Rochester v. Bond*, 603 F.2d 927, 931 (D.C. Cir. 1979))). Section 923(f)(3)'s right of review is limited to whether ATF was authorized to revoke or deny the license. *See Fairmont Cash Mmgt, L.L.C.*, 858 F.3d at 362 ("In reviewing the ATF's decision, the question is whether it was authorized to revoke the petitioner's FFL."). Under the GCA, "[a] single willful violation authorizes the ATF to revoke the violator's FFL, regardless how severe[.]" *Id.* Accordingly, the question for this Court is simple: did OFM commit a single willful violation of the GCA? If so, that is the end of the inquiry. Defendants discuss the relevant violations in turn.

       1.   *Violations Related to Alan Aronstein*

ATF based the revocation of OFM's license on six violations, three of which relate to Alan Aronstein being an unlisted responsible person for OFM. These violations are as follows: (1) OFM knowingly made a false statement or representation in applying for a firearms license by omitting Aronstein as a responsible person, in violation of 18 U.S.C. § 924(a)(1) and 27 C.F.R. § 478.128(a); (2) OFM willfully violated the GCA by having a prior willful violator of the GCA (Aronstein) as an unlisted responsible person for OFM, and is therefore subject to revocation under 18 U.S.C. § 923(e) and 27 C.F.R. § 478.73; and (3) OFM willfully failed to give written notification to the Chief, Federal Firearms Licensing Center within 30 days of an actual or legal change in control of the corporation or association holding the license by failing to add Aronstein as a person in a position of control, in violation of 27 C.F.R. § 478.54. *See* Defs.' Ex. B at 2–3; Defs.' Ex. A at 4–8.

       i.   Aronstein is a "responsible person."

To begin, the first two violations are premised on Aronstein being a responsible person for OFM, and the weight of the evidence demonstrates that Aronstein has been acting as a responsible person for OFM since 2018. For purposes of the GCA, the term "responsible person" means, in the case of a corporation, partnership, or association, "any individual possessing, directly or indirectly, the

power to direct or cause the direction of the management, policies, and practices of [a] corporation, partnership, or association, insofar as they pertain to firearms." *Crusader Gun Grp.*, 2023 WL 6194039, at *4 (quoting *Gossard v. Fronczak*, 206 F. Supp. 3d 1053, 1061 (D. Md. 2016)). Responsible persons are not necessarily limited to the owners or officers of a company and may include individuals who have the ability to control the company's firearms-related operations. *See United States v. King*, 735 F.3d 1098, 1105 (9th Cir. 2013) (explaining ATF must be able to "look beyond the corporate structure, to related persons and entities able to direct the applicant's operation and management").

At the administrative hearing, the government submitted forty-nine exhibits and called one witness, Tommy Gray, who was the industry operations investigator ("IOI") who ultimately inspected OFM's premises in 2022. Of that evidence, perhaps the most important is a written signed statement from OFM's president and sole listed responsible person, Ramiro Romo. *See* Defs.' Ex. E, Romo Written Signed Statement. In July 2022, ATF attempted to initiate a compliance inspection of OFM's premises, but Romo told the investigator that the inspection could not take place until Aronstein was present, because "Aronstein runs the show." Defs.' Ex. D, ATF Administrative Hearing Tr. 26:13; *see* Defs.' Ex. E. The investigator agreed to postpone the inspection and had Romo and OFM's secretary Jessica Portillo sign the following written statement:

> SIOI Mata attempted to conduct a full compliance inspection at the business premises of Bencivenga Corporation dba OFM Corp. SIOI Mata rang the doorbell and was greeted by administrative assistant, Jessica Portillo. SIOI Mata requested to see the owner of OFM Corp. and was told he was not at the licensed premises. SIOI Mata presented her card and was invited into the business premises. Mrs. Portillo stepped to the back office and Mr. Ramiro Romo, President of OFM Corp greeted SIOI Mata.
>
> SIOI Mata explained she was there to conduct a full compliance inspection. Mr. Romo indicated that Mr. Alan Aronstein was out of town and SIOI Mata would have to return to the business premises upon his return. SIOI [Mata] verified that Mr. Romo was the President of OFM Corp. and the sole person listed as a responsible person on the license. Mr. Romo indicated that Mr. Alan Aronstein conduct[s] all firearm transactions for the business. Mr. Romo contacted Mr. Alan Aronstein via telephone. SIOI Mata spoke to Mr. Alan Aronstein and made an appointment to conduct the inspection on 7/27/2022. Mr. Alan Aronstein indicated it should take no longer than

10

two days since the business was small. SIOI Mata thanked Mr. Aronstein and left the business premises.

Defs.' Ex. E. The signed statement indicates that Aronstein possessed the power to direct OFM's management, policies, and practices related to firearms, as he was the only person sufficiently familiar with OFM's firearms transactions to facilitate an ATF compliance inspection. During compliance inspections, ATF reviews business operations, evaluates a licensee's internal controls and security measures, verifies compliance with state and local laws, conducts a physical inventory of the firearms, and reviews the acquisition & disposition record and other ATF forms. *See Firearms Compliance Inspections; see also* FAC ¶ 178 ("[Aronstein] handles most if not all sales for OFM."). Additionally, the signed statement demonstrates that those employed at OFM, like Portillo, viewed Aronstein as the "owner" of OFM.

But the written signed statement is not the only evidence demonstrating that Aronstein was a responsible person. On August 18, 2022, a different ATF investigator, IOI Tommy Gray, returned to OFM to initiate OFM's compliance inspection. And following that inspection, on September 30, 2022, IOI Gray spoke with Aronstein, a conversation he documented. Defs.' Ex. D, Tr. 30:21–31:2. IOI Gray testified at ATF's administrative hearing that during that conversation:

> Mr. Aronstein stated that he and Mr. Romo are operating a joint venture based on a verbal agreement . . . . Mr. Aronstein stated he also purchases firearms through his Interarms account and with an American Express Credit Card for Bencivenga Corporation. Mr. Aronstein stated that he conducts payroll operations through his Tex Products account for Bencivenga Corporation employees. . . . Mr. Aronstein also stated that Bencivenga Corporation is staffed by the same employees that he had with High Standard [a former FFL] and they were operating from the same location.

Defs.' Ex. D, Tr. 31:3–31:22. That Aronstein and Romo are operating a "joint venture," whereby Aronstein purchases firearms for OFM and conducts all payroll operations through his own payroll account for OFM employees, and the fact that the venture is staffed by Aronstein's former employees and operates from Aronstein's former business location, collectively suggests that Aronstein is not

just an "unpaid consultant" or "clerk," as OFM alleges. *See* FAC ¶ 178. Additionally, the following month, IOI Gray spoke to Romo, who explained that he and Aronstein had been working together since 2018 and that he wanted to continue that business arrangement. Defs.' Ex. D, Tr. 33:8–33:11.

But there's more. Aronstein is apparently also responsible for OFM's business premises. IOI Gray testified during the administrative hearing that, during his inspection of OFM, he obtained copies of a commercial lease agreement, a consent-to-sublease agreement, and a sublease agreement. *See* Defs.' Ex. F, Commercial Lease; Defs.' Ex. G, Consent to Sublease Agreement; Defs.' Ex. H, Sublease. These agreements show that OFM's business premises are leased by Aronstein's company, Crusader Gun Group, LLC, at a rate of approximately $4,500 per month, and the premises are subleased to OFM at a rate of $10 per month, and have been since 2019. Defs.' Ex. D, Tr. 34:16–38:5, 108:5–108:14. IOI Gray also testified that Aronstein maintains an office at the premises and pays the utilities for the office space. *Id.* Charges for the building security system are covered under the original tenant lease agreement, which is held by Crusader (i.e., Aronstein). *Id.*

OFM presented little evidence at the administrative hearing to rebut that Aronstein was a responsible person. OFM submitted the same signed declarations by Romo and Aronstein it submitted in support of its first motion for a temporary restraining order, but those declarations do not set forth facts contradicting that Aronstein is a responsible person; they merely deny that he is. *See* Defs.' Ex. I, Romo Decl. Dated 7/17/2023 ¶ 16; Defs.' Ex. J, Romo Decl. Dated 10/6/2023; Defs.' Ex. K, Aronstein Decl. Dated 10/6/2023. OFM cross-examined IOI Gray. Defs.' Ex. D, Tr. 57:1–94:7. And Romo testified. *Id.* 95:1–123:1. The upshot of that testimony is that Romo denied that Aronstein was a responsible person, and stated that by "joint venture," he actually meant that Aronstein would receive a commission if he finds a buyer for Romo's business. *Id.* 96:5–96:24.

On cross-examination, Romo also made a number of significant concessions that further support that Aronstein was a responsible person. Romo stated that he "fe[lt] more comfortable with

12

Mr. Aronstein being [present]" for the inspection, *id.* 107:8–107:10; that Aronstein pays the employees from Aronstein's prior company that no longer has a firearms license because "[i]t's all the same thing," *id.* 107:16–107:18; that Aronstein pays approximately $6,000 of the rent of OFM's business premises while Romo subleases for $10, *id.* 108:10–108:14; that Aronstein does not currently have a firearms license, *id.* 108:15–108:18; that Romo knew Aronstein was found to be a willful violator of the GCA, *id.* 109:10–109:12; and that Romo was aware that Aronstein cannot currently have a firearms license, *id.* 109:13–109:25.

To recap: OFM operates out of the premises of Aronstein's former firearms company with all the same staff as that former company; Romo is responsible for $10 in rent each month for those premises, while Aronstein is responsible for between $4,500 and $6,000; Aronstein is responsible for most if not all of OFM's firearms transactions and OFM required him to be present for ATF's firearms compliance inspection; Aronstein purchases firearms for OFM through his own Interarms account with his own credit card; Aronstein conducts all of OFM's payroll operations through his own payroll account; and both Aronstein and Romo have at various points described OFM as their joint venture. The weight of the evidence demonstrates that Aronstein is a responsible person.

ii.    Aronstein is not eligible to serve as a "responsible person" for an FFL.

When an FFL is found to have committed willful violations of the GCA or its implementing regulations, that FFL and its responsible persons are prohibited from holding another federal firearms license or serving as responsible persons for another FFL moving forward. *See* 18 U.S.C. § 923(e) (permitting license revocation "if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter"); *id.* § 923(d)(1)(C) (permitting denial of license if the "applicant" has "willfully violated any of the provisions of this chapter or regulations issued thereunder"); *Crusader Gun Grp.*, 2023 WL 6194039, at *4 (holding license "applicant" includes "responsible person"); *2nd Amend. Guns, LLC v. ATF*, No.

13

1:13-CV-01947, 2014 WL 7051753, at *7 (D. Or. Dec. 12, 2014) ("The company, acting through its officers, willfully violated the Act and all 'responsible persons' named on [the] license are personally accountable for those violations.").

Aronstein is not eligible to serve as a responsible person for an FFL because he was the sole responsible person for three prior firearms businesses who were found to have willfully committed thousands of violations of the GCA. In the 2000's, Aronstein was the sole designated responsible person for three firearms businesses: Tex-Products, High Standard Manufacturing, and Firearms International. *Crusader Gun Grp.*, 2023 WL 6194039, at *1.[5] In 2008, ATF inspected those businesses and found that they had willfully committed thousands of violations of federal firearms laws and regulations, including over 6,000 record-keeping errors; failure to report the theft or loss of over 200 firearms; knowing possession of eight unlawful machine guns; and failure to serialize firearms frames. *Id.* ATF decided to revoke these licenses; the revocation was ultimately uncontested, and the businesses ceased operating and surrendered their licenses. *Id.* Because Aronstein was the sole responsible person for these business, as another court in this district recently held, the "[v]iolations of the GCA that Aronstein committed through [these] earlier business enterprises are properly attributable to Aronstein." *Id.* at *5.

   iii. ATF was authorized to revoke OFM's license for three violations.

Having established that Aronstein was a responsible person, but was not eligible to be, we can turn to OFM's specific violations. *First*, OFM knowingly made a false statement or representation in applying for a firearms license by omitting Aronstein as a responsible person, in violation of 18 U.S.C. § 924(a)(1) and 27 C.F.R. § 478.128(a). Substantial evidence supports this violation, as OFM's

---

[5] ATF introduced evidence of the revocation of these licenses as exhibits at the administrative hearing, but for convenience, this brief refers to the facts as set forth in the decision of another court in this district who considered that same evidence in affirming ATF's denial of the federal firearms license application of Aronstein's business, Crusader Gun Group. *See Crusader Gun Grp.*, 2023 WL 6194039 at *1–2.

application for an amended federal firearms license from 2019 and OFM's license renewal application from 2020 failed to list Aronstein as a responsible person, despite the fact that by Romo's own statement, Aronstein and Romo have operated OFM as a joint venture since 2018. *See* Defs.' Ex. L, OFM's Application for an Amended Federal Firearms License; Defs.' Ex. M, OFM's License Renewal Application.

*Second*, OFM is a willful violator of the GCA subject to revocation/denial. 18 U.S.C. § 923(e); 27 C.F.R. § 478.73. Substantial evidence supports this violation, as set forth above, *supra* pp. 13–14, because "[v]iolations of the GCA that Aronstein committed through earlier business enterprises are properly attributable to Aronstein and his new business enterprise—[OFM]." *Crusader Gun Grp.*, 2023 WL 6194039, at *5. "Accordingly, ATF was authorized to deny," or revoke, OFM's license "based upon even a single violation." *Id.*; *see also 2nd Amend. Guns*, 2014 WL 7051753, at *7 ("There is no reasonable question that 2nd Amendment Guns' acts are reasonably imputed to its officers and *vice versa*."). Defendants note that OFM has not contested the violations or willfulness of the violations of Aronstein's prior businesses in this action. *See also Crusader Gun Grp.*, 2023 WL 6194039, at *5 ("Aronstein's repeated violations in spite of ATF's warnings and instructions show that these violations were willful.").

And *third*, OFM willfully failed to give written notification to the Chief, Federal Firearms Licensing Center within 30 days of an actual or legal change in control of the corporation or association holding the license in violation of 27 C.F.R. § 478.54. As set forth above, the weight of the evidence demonstrates that Aronstein assumed a position of control of OFM in 2018 or 2019, but OFM never notified ATF of this change. Defs.' Ex. D., Tr. 43:5–43:11.

Accordingly, these three violations separately and independently authorized ATF to revoke OFM's license.

15

*2. Remaining Violations*

Even apart from the violations involving Aronstein, ATF was authorized to revoke OFM's licenses based on three other violations.

*First*, the weight of the evidence supports that OFM willfully sold or disposed a firearm to a person OFM knew or had reasonable cause to believe was subject to federal firearms disabilities, in violation of 18 U.S.C. § 922(d) and 27 C.F.R. § 478.99(c). IOI Gray testified at the administrative hearing that Earle Seymour Wainstein filled out a Firearms Transaction Record, ATF Form 4473, dated June 10, 2022. Defs.' Ex. D, Tr. 46:8–48:15.  Wainstein answered "yes" to Item 12.1.1, which indicates he is a noncitizen who was admitted to the United States under a non-immigrant visa. Such persons are generally subject to federal firearms disabilities under 18 U.S.C. § 922(g)(5)(B). Importantly, Wainstein did not indicate on the Form 4473 that he fell within any of the exceptions to the prohibition, and OFM neither indicated that Wainstein presented the type of documentation establishing the exception to the prohibition, nor attached a copy of such documentation, both of which are required by the GCA's implementing regulations. *See* 27 C.F.R. § 478.124(c)(3)(iii); Defs.' Ex. N, Wainstein Form 4473. IOI Gray testified that he confirmed with the Texas Parks and Wildlife license department and determined that Wainstein did not have a valid hunting license from the State of Texas. Without a valid hunting license, Wainstein was therefore, in fact, not entitled to receive the firearm. *See* Defs.' Ex. O, Texas Parks and Wildlife Email. The instructions on the Form 4473 itself plainly state that when someone indicates that they fall within an exception to the prohibition, the FFL must add the supporting documentation.

*Second*, on three occasions, OFM willfully failed to timely and/or accurately record the disposition of a firearm, in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.123(b). During his inspection, IOI Gray discovered three open dispositions in OFM's acquisition and disposition record for which the firearms were not located on the premises. IOI Gray testified during the hearing

16

that Romo had taken personal possession of two of the firearms, but OFM had not logged their dispositions in the records, as required under the GCA. OFM could not locate the third firearm, and as a result, OFM needed to prepare a theft loss report following the inspection. Defs.' Ex. D, Tr. 50:2–50:25; Defs.' Ex. P, OFM Acquisition & Disposition Record; Defs.' Ex. Q, Theft/Loss Report. ATF found these violations to be willful because other firearms were correctly logged out, and OFM was well aware of its obligation to timely and accurately record the disposition of a firearm yet purposefully disregarded or was plainly indifferent to this requirement.

*Lastly*, on two occasions, OFM willfully failed to sign and/or date the Firearms Transaction Record, ATF Form 4473, certifying that the licensee does not know or have reason to believe the transferee is disqualified by law from receiving the firearm described on the Form, in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(c)(5). In the first instance, Earle Wainstein initially completed an ATF Form 4473 on June 10, 2022. OFM received a "delay" response when it contacted the National Instant Criminal Background Check System ("NICS"), indicating that it could not transfer the firearm until it either received a "proceed" response or at least three business days elapsed. *See* Defs.' Ex. N, Weinstein Form 4473; Ex. D, Tr. pp. 54:1–54:23. Once Wainstein returned to the store, he recertified his answers on June 28, 2022. Aronstein, however, signed the Form 4473 indicating that he transferred the firearm to Wainstein on June 10, 2022—before OFM received a "proceed" response or three days had passed. In the second instance, Jessica Portillo initially completed the Form 4473 on June 24, 2022. *See* Defs.' Ex. R, Portillo Form 4473. After OFM received a "delay" response from NICS, Portillo recertified her responses on June 28, 2022. However, Aronstein signed and dated the Form as if the firearm was transferred on June 24, 2022. IOI Gray testified that in both instances, Aronstein transferred a firearm and put an incorrect transfer date on the Form 4473. Defs.' Ex. D, Tr. pp. 54:1–55:9.

17

### 3. *Willfulness*

ATF's findings also support its conclusion that these violations were willful within the meaning of the GCA such that revocation of OFM's license was authorized. "A license holder commits a willful violation under § 923 if the licensee knew of his legal obligation and purposefully disregarded or was plainly indifferent to" those obligations. *Fairmont Cash Mgmt., L.L.C.*, 858 F.3d at 362. The individual circumstances of the violations support a finding of willfulness. *See, e.g.*, Defs.' Ex. D, Tr. pp. 107:16–109:25 (Romo testifying on cross-examination that Aronstein's prior company and OFM are "all the same thing," and that Romo knew Aronstein does not currently have a firearms license, was a prior willful violator of the GCA, and cannot currently have a firearms license). Additionally, the fact (1) that Romo has been in the firearms business for 33 years except for an 18-month period, and (2) that ATF employees reviewed the relevant federal firearms laws and regulations with Romo for each of his businesses during qualification inspections, change of address inspections, and compliance inspections, demonstrate that Romo and OFM were aware of the applicable legal obligations, but purposefully disregarded or were plainly indifferent to them. *See* Defs.' Ex. S; Defs.' Ex. D, Tr. pp. 38:14–42:11.

Accordingly, ATF was authorized to revoke OFM's license based on six separate willful violations of the GCA, and OFM cannot succeed on its claims to the contrary.

## II.   Plaintiff has failed to make a showing of irreparable harm.

Because OFM "*cannot* show a substantial likelihood of success on the merits," its motion for preliminary relief "should be denied, and there is no need for the [C]ourt to address the other requirements for a preliminary injunction." *Butts v. Aultman*, 953 F.3d 353, 361 (5th Cir. 2020); *see CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 264 n.22 (5th Cir. 2022) ("[Plaintiff's] failure to show a likelihood of success alone is sufficient to justify a denial."). Yet even if the Court were to consider

those requirements, OFM's motion still fails because it has not made the requisite showing of irreparable harm. *See Winter*, 555 U.S. at 24.

A preliminary injunction is an "extraordinary remedy" that should not be granted "unless the party seeking [one] has 'clearly carried the burden of persuasion' on all four requirements." *TransPerfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 748 (S.D. Tex. 2009) (Ellison, J.) (quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003)). To meet this burden, then, the movant "must demonstrate" the requisite "threat of irreparable harm by independent proof." *BioTE Med., LLC v. Jacobsen*, 406 F. Supp. 3d 575, 584 (E.D. Tex. 2019) (citation omitted). And such proof "requires more than vague or conclusory" allegations. *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, ---F. Supp. 3d---, 2023 WL 4291992, at *8 (W.D. Tex. June 30, 2023), *injunction granted pending appeal*, 2023 WL 9864371 (5th Cir. Aug. 7, 2023); *see Anibowei v. Morgan*, 70 F.4th 898, 904 (5th Cir. 2023) (concluding that "conclusory" allegations in a verified complaint were insufficient to establish irreparable harm).

OFM has not come close to clearly demonstrating that it will suffer irreparable harm here. It asserts that it will "likely suffer" an "unrecoverable monetary loss" if preliminary relief is not granted. Mem. ¶¶ 19-20. But OFM offers no evidence speaking to the size, scope, or nature of that unspecified loss. *Contra, e.g.*, *Heartland Outdoor, Inc. v. Miller*, No. 23-CV-1182, 2023 WL 6376751, at *7 (D. Kan. Sept. 29, 2023) (finding irreparable harm where the plaintiff-licensee's evidence "present[ed] a relatively specific estimate of expected [monetary] injury absent injunctive relief"); *Streicher's, Inc. v. Hummel*, No. 23-CV-995, 2023 WL 3018680, at *6 (D. Minn. Apr. 20, 2023) (finding the same where "it [was] virtually certain" that the plaintiff-licensee would "lose[] 90% of its firearms business" absent "the requested injunctive relief"); *Paducah Shooters Supply, Inc. v. Rogers*, ---F. Supp. 3d---, 2023 WL 5769364, at *8 (W.D. Ky. Aug. 12, 2023) (finding the same where it was "obvious and undisputed" that the plaintiff-licensee "derive[d] 75% of its revenue from the sale of firearms"). Nor does OFM

19

explain—let alone demonstrate with "independent proof," *BioTE Med., LLC*, 406 F. Supp. 3d at 584—how and to what extent, without an injunction, its business operations will be irreparably harmed between now and "the time the Court makes a decision on the merits." *Semon v. Holder*, No. 4:09-CV-590, 2010 WL 715580, at *6 (E.D. Tex. Feb. 19, 2010) (adopting a magistrate judge's finding that the plaintiff-licensee "failed to put on evidence to show what harm he would suffer" during the same period absent preliminary relief). An extraordinary remedy should not be granted based on such an extraordinarily scant showing of entitlement to that remedy.[6] *See TransPerfect Translations, Inc.*, 594 F. Supp. 2d at 748.

The expected monetary loss OFM alleges would, in any event, be an inevitable consequence of its failure to meet the obligations demanded of a business that deals in firearms. *See supra* Part I.B. That is, OFM is set to lose money as a firearms business precisely because it was operating that business unlawfully. *See Posey v. Garland*, No. 1:23-CV-00051, 2023 WL 5435609, at *10 (E.D. Tenn. Aug. 23, 2023) (finding no irreparable harm where, based on the court's "analysis of the merits," any financial loss suffered by the plaintiff-licensee absent injunctive relief was a "self-inflicted harm" flowing from its "unlawful[]" operations). And such "self-inflicted harm" should not qualify as an irreparable injury for purposes of obtaining a preliminary injunction. *Id.*; *see Texas v. U.S. EPA*, 662 F. Supp. 3d 739, 756 (S.D. Tex. 2023) ("[S]elf-inflicted harm is not irreparable.").

OFM, in short, has failed to make an adequate showing of irreparable harm, which is an "essential requirement" for obtaining a preliminary injunction. *Career Colls. & Schs. of Tex.*, 2023 WL

---

[6] OFM also suggests that it will suffer an irreparable "loss of Second Amendment rights" absent a preliminary injunction. Mem. ¶ 23. But OFM's FAC does not even allege a Second Amendment claim, *see* FAC ¶¶ 176–340, let alone a colorable one. *Cf. Morehouse Enters., LLC v. ATF*, 78 F.4th 1011, 1018 (8th Cir. 2023) ("[W]e are left unsure what behavior [a business plaintiff] wishes to engage in, as an LLC, that is protected by the Second Amendment."). Preliminary relief thus cannot be based on a constitutional injury that OFM, according to its own pleadings, did not even suffer.

4291992, at *10. Its request for such relief should thus be denied on that basis as well.[7] *See id.*; *see also*

*Multilift Wellbore Tech. Ltd. v. ESP Completion Techs. LLC*, No. 2:16-CV-1187, 2017 WL 10222420, at *2

(E.D. Tex. July 25, 2017) (concluding that a plaintiff "ha[d] not established irreparable harm and thus

[was] not entitled to preliminary relief").

**III.    The balance of the equities and the public interest favor Defendants.**

The third and fourth requirements for obtaining a preliminary injunction—whether the

balance of the equities tips in the movant's favor, and whether an injunction is in the public interest,

*Winter*, 555 U.S. at 20—"merge when the Government is the opposing party." *Clarke v. Commodity*

*Futures Trading Comm'n*, 74 F.4th 627, 643 (5th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435

(2009)). And these two factors tilt decidedly against the issuance of a preliminary injunction here.

First and foremost, the public interest is undoubtedly served by ATF's robust enforcement of

the GCA, a statute that reflects a "carefully crafted plan" on the part of Congress "to ensure that

firearms do not end up in the wrong hands." *Fairmont Cash Mgmt., L.L.C.*, 858 F.3d at 363; *see RSM,*

*Inc. v. Herbert*, 466 F.3d 316, 323 (4th Cir. 2006) (recognizing the "need for strict compliance with the

Gun Control Act"). The GCA violations that OFM committed—which included, among other things,

losing track of a firearm in its inventory, *see* Defs.' Ex. A at 9, and placing in charge of its gun sales a

person who was found to have willfully committed thousands of GCA violations in his own right, *see*

*Crusader Gun Grp.*, 2023 WL 6194039, at *1—were serious. *See, e.g.*, *RSM, Inc.*, 466 F.3d at 324 ("When

a firearms dealer cannot account for guns or fails to ensure that guns are sold to authorized persons,

the public safety is directly and meaningfully implicated."). And, crucially, OFM has given no

---

[7] Even if the Court were to find that OFM is likely to suffer irreparable harm absent an injunction, that finding would not, standing alone, entitle OFM to the preliminary relief it seeks. *See, e.g.*, *Heartland Outdoor, Inc.*, 2023 WL 6376751, at *8 (denying a preliminary injunction despite finding that the plaintiff had "sufficiently . . . shown" that it was likely to suffer irreparable harm); *Tactical Edge, LLC v. Garland*, ---F. Supp. 3d---, 2023 WL 6393175, at *3 (M.D. Tenn. Sept. 29, 2023) (denying a preliminary injunction despite the parties having stipulated to the existence of irreparable harm).

indication that it took any corrective steps to mitigate the risks posed by its non-compliant operations. *Contra Paducah Shooters Supply, Inc.*, 2023 WL 5769364, at *8 ("Given that the current record indicates [the plaintiff-licensee] has addressed any ongoing safety risks, a preliminary injunction would not risk substantial harm to third parties . . . ."). Instead, OFM continues to double down on its belief that nearly all of the violations that resulted in its license being revoked simply never happened. *See* Mem. ¶¶ 17-18. OFM's patent disregard for its obligations under the GCA thus remains a threat to public safety. *See Posey*, 2023 WL 5435609, at *11 ("When the Court considers the threat that [the plaintiff's] past misconduct posed to the public, it can only conclude that a preliminary injunction that allows [the plaintiff] to return to business has the potential to cause substantial harm to others."); *Heartland Outdoor, Inc.*, 2023 WL 6376751, at *8 ("[Plaintiff's] lack of GCA compliance threatens the public.").

OFM also contends that "permitting [it] to continue business" while the Court adjudicates the merits of its claims will not "impede" ATF from enforcing the GCA against other FFLs. Mem. ¶ 24. But this argument misses the mark. Notwithstanding the lack of assurances from OPM that it would not commit additional GCA violations if it were allowed to continue dealing in firearms, OPM's case cannot be viewed in isolation. If every gun shop deemed by ATF to be a willful violator of the GCA could so easily enjoin a license revocation pending subsequent judicial review, ATF's enforcement efforts would, in effect, become subject to district courts' already-busy calendars. And such an outcome would also ensure that such violators remain open—and have the opportunity to commit additional GCA violations—until their § 923(f)(3) proceedings conclude.

At bottom, the balance of the equities and the public interest, like the other two preliminary injunction factors, weigh in favor of denying OFM's request for preliminary relief.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion for a Preliminary Injunction.

Dated: March 11, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Brian Rosen-Shaud*
TAYLOR PITZ (CA Bar No. 332080)
BRIAN C. ROSEN-SHAUD (ME Bar No. 006018)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 305-5200
Email: Taylor.N.Pitz@usdoj.gov

*/s/ Myra Siddiqui*
Myra Siddiqui
Assistant United States Attorney
Texas Bar No. 24106434
Southern District No. 3257790
1000 Louisiana, Suite 2300
Houston, Texas 77002
Phone: (713) 567-9600
E-mail: myra.siddiqui@usdoj.gov

*Attorneys for Defendants*

23

## CERTIFICATE OF SERVICE

On March 11, 2024, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ *Brian Rosen-Shaud*
Brian C. Rosen-Shaud
Trial Attorney
U.S. Department of Justice