United States District Court
Southern District of Texas
**ENTERED**
May 17, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **BENCIVENGA CORPORATION D/B/A OFM CORPORATION,** § § § | |
| Plaintiff, § § | |
| § | CIVIL ACTION NO. 4:23-cv-3887 |
| VS. § § | |
| **BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,** *et al.*, § § | |
| Defendants. | |

### MEMORANDUM & ORDER

Before the Court is Plaintiff Bencivenga Corporation d/b/a OFM Corporation's ("OFM") Motion for a Preliminary Injunction (ECF No. 37). The Court held a hearing on the matter on May 14, 2024. For the reasons that follow, the Court now **DENIES** Plaintiff's Motion.

**I. BACKGROUND**

Plaintiff OFM is a Texas corporation that, until recently, held a federal firearm license ("FFL"). In October of 2023, when revocation of its FFL appeared imminent, OFM sued the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and various officials connected to the agency.

**A. Statutory and Regulatory Scheme**

The Gun Control Act of 1968 ("GCA"), codified at 18 U.S.C. § 921 *et seq.*, establishes a regulatory framework for FFLs. The GCA requires each person engaged "in the business of importing, manufacturing, or dealing in firearms, or importing or manufacturing ammunition" to secure a FFL, § 923(a), and gives the Attorney General the authority to approve and revoke FFLs, §§ 923(c), (e). Specifically, the Attorney General "may, after notice and opportunity for hearing,

1

revoke any license issued under [the Gun Control Act] if the holder of such license has willfully violated any provision of [the Act] or any rule or regulation prescribed by the Attorney General under [the Act]." § 923(e). Congress and the Attorney General have delegated the authority to enforce the Gun Control Act to the ATF. 28 U.S.C. § 599A; 28 C.F.R. § 0.130(a).

The ATF conducts periodic and random inspections to determine whether FFL holders are in compliance with relevant laws and regulations. § 923(g)(1)(B); 28 C.F.R. § 0.130(a). If an inspection gives the ATF "reason to believe that a licensee has willfully violated any provision of the Act," it may issue a notice of revocation of the license. 27 C.F.R. § 478.73(a). In 2022, the Biden Administration enacted a "zero tolerance" policy that explained several ways in which ATF may establish willfulness in its revocation proceedings. ATF Order 5370.1E, "Federal Firearms Administrative Policy and Procedures" (2022 AAP).

If, as here, ATF finds willful violations meriting revocation proceedings, it first sends a notice of suspension, revocation, or imposition of a civil fine. At that point, the licensee has the right to request a hearing with the Director of Industry Operations ("DIO") in their ATF field division. 27 CFR § 478.74. The ATF follows an informal hearing process, meaning that it is not bound by the APA's formal adjudication procedural requirements. *See Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 362 (5th Cir. 2017) ("The Administrative Procedures Act does not apply to revocation hearings by the ATF."). The DIO presides over the hearing, and an ATF attorney as well as the licensee (who is entitled to be represented by an attorney if desired) can present evidence and arguments. ECF No. 1-11 at 2 (ATF Explanation of Hearing Process). If, following the hearing, the DIO issues a Final Notice of Denial, Revocation, Suspension and/or Fine of Firearms License, the licensee "may appeal the decision to the appropriate Federal district court within 60 days for de novo judicial review." *Id.*; *see also* 18 U.S.C. § 923(f)(3).

### B. OFM's FFL Revocation

ATF issued OFM's first FFL in 2003. Pl.'s First Am, Compl. ¶ 3, ECF No. 31 ("FAC"). In July 2023, following an ATF inspection, OFM received a Notice to Revoke or Suspend License and/or Impose a Civil Fine, issued by DIO James. OFM timely requested a hearing, which occurred on November 16, 2023 after this Court denied OFM's Motion for a Temporary Restraining Order that would have cancelled or delayed the hearing. ECF No. 37-1 ¶¶ 3–4. On January 23, 2024, DIO James notified OFM of the final denial of its FFL. The denial took effect on February 14, 2024.[1] *Id.* at ¶¶ 6–7. The Court will discuss OFM's alleged willful violations of the GCA—which formed the basis of ATF's revocation of OFM's FFL—when it turns to the merits of OFM's claims.

### C. The Instant Suit

OFM filed its Original Complaint on October 12, 2023, asserting ten claims that attempted to preempt ATF's administrative proceedings. It then filed a Motion for a Temporary Restraining Order on October 19, 2023, requesting that the Court enjoin Defendants from proceeding with OFM's license revocation hearing. ECF No. 11. After a hearing, the Court denied OFM's Motion.

OFM then filed its First Amended Complaint on February 6, 2024, which added a challenge to ATF's revocation to its previously asserted claims. ECF No. 11. In total, its amended complaint asserts twenty-eight claims. As relevant here, OFM's amended complaint seeks *de novo* judicial review of the denial of its application for an FFL pursuant to 18 U.S.C. § 923(f)(3). *Id.* ¶ 353. On February 14, 2024, OFM filed a second Motion for a Temporary

---

[1] Because OFM's application to renew its FFL was also pending at that time (the FFL was set to expire February 1, 2024), the revocation was automatically converted to a denial of the renewal application. *See Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 415 F.3d 1274, 1275 (11th Cir. 2005) (explaining the ATF's practice of converted license revocation hearings to license renewal hearings where the FFL expires during the pendency of the proceedings).

Restraining Order, requesting that the Court "stay" the revocation of OFM's license. ECF No. 33. OFM withdrew this Motion after the parties agreed on a schedule for future proceedings and ATF agreed to partially stay the revocation order with respect to dispositions and repair only. In accordance with the parties' agreed schedule, OFM filed its Motion for Preliminary Injunction on February 26, 2024. ECF No. 37. In sum, the Motion asks the Court to prevent Defendants from enforcing "the revocation of OFM's FFL and denial of the renewal of OFM's FFL pending the final resolution of the action on the merits." ECF No. 37-1 at 14.

## II.   LEGAL STANDARD

There are four prerequisites Plaintiff must satisfy for a court to impose the extraordinary relief of a preliminary injunction: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of immediate and irreparable harm, for which there is adequate remedy at law; (iii) that greater injury will result from denying the temporary restraining order than from its being granted; and (iv) that a temporary restraining order will not disserve the public interest. *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003) (citing *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1979)). "[I]f the movant does not succeed in carrying its burden on any one of the four prerequisites," neither a temporary restraining order nor preliminary injunction may issue. *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

## III.   ANALYSIS

### A. Likelihood of Success on the Merits

ATF revoked OFM's FFL based on a finding that OFM had willfully violated the GCA on six separate instances. Because "a single willful violation authorizes the ATF to revoke the violator's FFL, regardless how severe," if ATF is correct that OFM willfully violated the GCA

on just one instance, OFM is unlikely to succeed on the merits. *Fairmont Cash Mgmt., L.L.C.*, 858 F.3d at 362.

ATF based its revocation off of the following violations:

- Making a false statement or representation in applying for a firearms license by omitting Alan Aronstein as a responsible person, in violation of 18 U.S.C. § 924(a)(1) and 27 C.F.R. § 478.128(a).

- Having Aronstein, a prior willful violator of the GCA, as an unlisted responsible person for OFM, in violation of 18 U.S.C. § 923(e) and 27 C.F.R. § 478.73.

- Failing to give written notification to the Chief, Federal Firearms Licensing Center within 30 days of an actual or legal change in control of the corporation or association holding the license by failing to add Aronstein as a person in a position of control, in violation of 27 C.F.R. § 478.54.

- Selling a firearm to a person known to be subject to federal firearms disabilities, in violation of 18 U.S.C. § 922(d) and 27 C.F.R. § 478.99(c).

- On three separate occasions, failing to timely and/or accurately record the disposition of a firearm, in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.123(b).

- On two separate occasions, failing to sign and/or date the Firearms Transaction Record, ATF Form 4473, certifying that the licensee does not know or have reason to believe the transferee is disqualified by law from receiving the firearm described on the Form, in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(c)(5).

OFM contests that it did not commit the first three violations because Aronstein is not a "responsible person." For purposes of the GCA, a "responsible person" is "any individual possessing, directly or indirectly, the power to direct or cause the direction of the management,

policies, and practices of [a] corporation, partnership, or association, insofar as they pertain to firearms." *Crusader Gun Grp., LLC v. James*, No. 4:22-CV-00906, 2023 WL 6194039, at *4 (S.D. Tex. Aug. 17, 2023) (quoting *Gossard v. Fronczak*, 206 F. Supp. 3d. 1053, 1061 (D. Md. 2016)). Simply put, a responsible person is one who has the ability to control a company's firearms. FFL holders are required to provide ATF with information on their responsible persons so that ATF is able to "look beyond the corporate structure, to related persons and entities able to direct the applicant's operation and management' in determining whether to approve [or renew] a firearms license." *United States v. King*, 735 F.3d 1098, 1105 (9th Cir. 2013) (quoting *XVP Sports, LLC v. Bangs*, No. 11–379, 2012 WL 4329263, at *10 (E.D.Va. Mar. 21, 2012)).

If an FFL holder has previously committed willful violations of the GCA, that FFL holder and all of its responsible persons may not hold an FFL or serve as a responsible person for a different FFL holder.[2] *See* 18 U.S.C. § 923(e) (permitting FFL revocation "if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter"); 18 U.S.C. § 923(d)(1)(C) (permitting denial of an FFL where the applicant has "willfully violated any of the provisions of this chapter or regulations issued thereunder"); *see also Crusader Gun Grp.*, 2023 WL 6194039, at *4 (holding that statutory term "applicant" includes "responsible person" of corporation); *2nd Amend. Guns, LLC v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 1:13-CV-01947-CL, 2014 WL 7051753, at *7 (D. Or. Dec. 12, 2014) (holding that "all 'responsible

---

[2] OFM asserted in its briefing and at the hearing that because the term "responsible person" is not defined in the GCA, responsible persons cannot disqualify an FFL applicant. This amounts to the same argument that the *Crusader Gun Grp.* court rejected in a well-reasoned opinion just nine months ago. *See* 2023 WL 6194039, at *4. OFM points to no controlling or persuasive authority that could otherwise compel this Court to read "responsible persons" out of the regulatory framework.

6

persons' named on 2nd Amendment Guns' license" were "personally accountable" for willful GCA violations).

The parties agree that Alan Aronstein has previously committed willful violations of the GCA and that he is therefore unable to serve as a responsible person for an FFL holder such as OFM. *See Crusader Gun Grp.*, 2023 WL 6194039, at *5 (finding that Aronstein willfully violated the GCA). The parties similarly agree that OFM's 2019 and 2020 FFL applications did not list Aronstein as a responsible person, and that OFM did not notify ATF when Aronstein became a responsible person. *See* Def.'s Ex. L, ECF No. 12; Def.'s Ex. M, ECF No. 13.

Though he was indisputably ineligible to serve as a responsible person, and, furthermore, not listed as a responsible person for OFM, there is ample evidence in the record that Aronstein *did* serve as a responsible person for OFM. Ramiro Romo, OFM's president and sole listed responsible person (1) acknowledged that "Mr. Alan Aronstein conducted all firearms transactions for the business," Defs.' Ex. E, (2) told an ATF investigator that they could not inspect OFM until Aronstein was present, because "Aronstein runs the show," Defs.' Ex. D, ATF Administrative Hearing Tr. 26:13, ECF No. 39-4; *see* Defs.' Ex. E, and (3) testified that Aronstein pays OFM employees with funds from Crusader Gun Group, LLC—his prior company that lost its firearm license—because "[i]t's all the same thing," ATF Administrative Hearing Tr. at 107:11–107:23. A different ATF investigator also testified in the revocation hearing that Aronstein stated that he and Romo operate a "joint venture," and that Crusader Gun Group, LLC leases OFM's business premises. *Id.* at 31:3–31:22; 34:16–38:5. Plaintiff's own amended complaint states that Aronstein "handles most if not all sales for OFM." ECF No. 31 ¶ 178. Given these facts, it is of no import that Aronstein is not a shareholder, director, or officer of OFM. *See King*, 735 F.3d at 1105. He plainly has the ability to control OFM's firearm

7

management. Furthermore, it is clear from the record that Romo was aware that (1) Aronstein functioned as a responsible person for OFM and (2) Aronstein had previously been found to be a willful violator of the GCA who could not have an FFL. Defs.' Ex. E; ATF Administrative Hearing Tr. 26:13, 108:10–108:18; 109:10–109:25.

Because Aronstein is a responsible person for OFM, and because Romo was aware that Aronstein was not eligible to be a responsible person, ATF appears correct in its assessment that OFM willfully committed the first three of the above-listed GCA violations. *See Wells v. James*, No. 4:14-CV-1239, 2015 WL 5164971, at *2 (S.D. Tex. Sept. 2, 2015) (Ellison, J.). ("[W]illfully failing to disclose material information in an application for an FFL—including the fact that an individual[] legally ineligible to hold a license would serve as a responsible person in the firearms business—is sufficient grounds for the denial of a license under [the GCA].")

Turning briefly to the remaining three alleged GCA violations, OFM does not seem to contest that it erred in its recordkeeping; rather, it avers that these were "meaningless and harmless" errors. ECF No. 42-1 at 32. These contentions are not sufficient to establish a likelihood of success on the merits. Romo has been in the firearm business for 33 years, and each time he submitted a license application or had a compliance inspection, ATF reviewed the applicable rules and regulations with him. Administrative Hearing Tr. 38:13–42:11. Thus, OFM and Romo were aware of the record-keeping requirements they disregarded. *See Fairmont Cash Mgmt.*, 858 F.3d at 362 ("A license holder commits a willful violation under § 923 if the licensee knew of his legal obligation and purposefully disregarded or was plainly indifferent to the record-keeping requirements." (quoting *Arwady Hand Trucks Sales, Inc. v. Vander Werf*, 507 F. Supp. 2d 754, 761–62 (S.D. Tex. 2007))).

Though it may seem unfair to OFM that revocation could occur due to seemingly minor errors, as the Fifth Circuit aptly stated in *Fairmont Cash Mgmt*,

> Our question is not whether the ATF fairly distributes its revocation decisions among FFL-holders who violate the Gun Control Act; it is whether the ATF was authorized by the Act to revoke. And the fact that [the licensee's] violations were paperwork violations does not make them any less serious or less willful. The Gun Control Act imposes significant record-keeping obligations upon firearms dealers as part of Congress's carefully crafted plan to ensure that firearms do not end up in the wrong hands.

*Id.* at 363; *see also Athens Pawn Shop Inc. v. Bennett*, 364 F. App'x 58, 59–60 (5th Cir. 2010) (finding that violations were willful despite licensee's argument that they were "due to inadvertent and technical record-keeping mistakes" because licensee "was aware of its legal obligations but committed numerous subsequent infractions").

At the very least, OFM has not demonstrated that it is substantially likely to succeed on the merits—that is, to ultimately show that it did not willfully violate the GCA. OFM's failure to demonstrate its likelihood of success on the merits alone defeats its Motion for a Preliminary Injunction. But, for the avoidance of doubt, the Court will briefly address the remaining preliminary injunction factors.

### B. Immediate and Irreparable Harm

In the Fifth Circuit, "a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). To prevail on this factor, Plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original).

Plaintiff vaguely asserts that it faces unrecoverable monetary loss. However, as Defendant points out, Plaintiff "offers no evidence speaking to the size, scope, or nature of that unspecified loss," or even how, and to what extent, its business operations will be irreparably harmed between now and when the Court rules on the merits. ECF No. 39 at 25–26. Conclusory allegations cannot

9

establish irreparable harm. *Anibowei v. Morgan*, 70 F.4th 898, 904 (5th Cir. 2023); *see also Mitchell v. Sizemore*, No. 6:09CV348, 2010 WL 457145, at *3 (E.D. Tex. Feb. 5, 2010) (finding that "vague and conclusory allegation[s]" were insufficient to show substantial threat that plaintiff would suffer irreparable harm in the absence of injunction). And, monetary loss resulting from unlawful activities does not constitute irreparable harm. *See Posey v. Garland*, No. 1:23-CV-00051, 2023 WL 5435609, at *10 (E.D. Tenn. Aug. 23, 2023) (finding no irreparable harm where, based on the court's "analysis of the merits," any financial loss suffered by the plaintiff-licensee absent injunctive relief was a "self-inflicted harm" flowing from its "unlawful[]" operations). In the hearing, OFM was not able to add color to its vague assertions. The Court concludes that Plaintiff has not demonstrated that it will suffer irreparable injury in the absence of an injunction.

### C. Comparison of Harms and Public Interest

These final two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). OFM alleges that it faces the harm of enforcement of the revocation/renewal denial order, which, it argues, amount to a denial of its constitutional rights. By contrast, OFM asserts that ATF faces minimal harm if the Preliminary Injunction were granted, because it could seek "similar action upon other holders of an FFL." ECF No. 37-1 at 13. OFM further argues that a Preliminary Injunction does not disserve the public interest because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (internal quotation omitted). However, OFM's Complaint does not allege a Second Amendment harm. It cannot claim it is entitled to an injunction based on a constitutional injury that does not appear in its complaint. *See Heartland Outdoor, Inc. v. Miller*, No. 23-1182-DDC-BGS, 2023 WL 6376751, at *8 (D. Kan. Sept. 29, 2023) (rejecting

plaintiff's argument that an injunction will serve the public interest because it promotes Second Amendment rights because "[plaintiff] doesn't allege its own Second Amendment harm.")

Moreover, it is in the public interest to ensure that the GCA is followed so that firearms do not find their way into the wrong hands. *Fairmont Cash Mgmt*, 858 F.3d at 363; *see also Chambered Grp. USA LLC v. Babcock*, No. CV-23-01850-PHX-SPL, 2023 WL 6317941, at *5 (D. Ariz. Sept. 28, 2023) ("A licensee's failure to follow the GCA regulations jeopardizes public interest because it poses a danger to society."); *RSM, Inc. v. Herbert*, 466 F.3d 316, 324 (4th Cir. 2006) ("When a firearms dealer cannot account for guns or fails to ensure that guns are sold to authorized persons, the public safety is directly and meaningfully implicated."); *Heartland Outdoor*, 2023 WL 6376751, at *8 ("[Plaintiff]'s lack of GCA compliance threatens the public").

Plaintiff has not demonstrated that the balance of the equities and the public interest favor the issuance of a preliminary injunction.

## IV. CONCLUSION

In sum, Plaintiff has not satisfied any of the four prerequisites required for the issuance of a preliminary injunction. The Court's conclusion as to any one of these factors on its own would be enough to deny Plaintiff's Motion. Together, the Court's analysis emphatically points towards denial of injunctive relief. Accordingly, Plaintiff's Motion for a Preliminary Injunction (ECF No. 37) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 17th of May, 2024.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE