**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| BENCIVENGA CORPORATION D/B/A OFM CORPORATION<br><br>*Plaintiff,*<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, *et al.,*<br><br>*Defendants.* | No. 4:23-CV-3887 |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

**INTRODUCTION AND SUMMARY OF THE ARGUMENT** ...............................................1

**NATURE AND STAGE OF THE PROCEEDING** ................................................................2

**STATEMENT OF THE ISSUES** ............................................................................................2

**BACKGROUND** .....................................................................................................................2

I.     Statutory and Regulatory Background.............................................................................2

II.    Current ATF Enforcement Policies and Guidance .........................................................4

III.   Relevant Parties .............................................................................................................5

IV.    This Lawsuit....................................................................................................................7

**LEGAL STANDARD** ............................................................................................................9

**ARGUMENT** .........................................................................................................................9

I.     Any one of six willful violations of the GCA support the revocation of OFM's
       federal firearms license. ................................................................................................9

       A.     Violations Related to Alan Aronstein..................................................................10

              i.     Aronstein is a "responsible person."......................................................10

              ii.    Aronstein is not eligible to serve as a "responsible person" for an
                     FFL..........................................................................................................14

              iii.   ATF was authorized to revoke OFM's license for any of the three
                     Aronstein-related violations...................................................................16

       B.     Remaining Violations ........................................................................................17

       C.     Willfulness.........................................................................................................19

II.    OFM's contentions regarding the Enhanced Regulatory Enforcement Policy fail as a
       matter of law. ................................................................................................................24

       A.     OFM lacks standing to challenge the Policy......................................................24

       B.     ATF enforcement decisions are committed to agency discretion by law....................26

       C.     OFM has not challenged a reviewable final agency action............................................27

       D.     ATF's Policy is not contrary to the GCA. ...............................................................28

III.    DIO James properly served as the presiding officer at ATF's revocation hearing. .................30

IV.    OFM's license revocation/denial of renewal accords with due process. ...................................32

V.    OFM has no right to a trial by jury. ...............................................................................................34

**CONCLUSION** ........................................................................................................................**35**

# TABLE OF AUTHORITIES

**Cases**

*2nd Amend. Guns, LLC v. ATF,*
No. 1:13-cv-01947-CL, 2014 WL 7051753 (D. Or. Dec. 12, 2014) ............................................ 15, 17

*7 Santini Brothers Trucking, Inc. v. City Ocean Int'l Inc.,*
No. H-24-656, 2024 WL 2836274 (S.D. Tex. June 4, 2024) ................................................................28

*Arwady Hand Truck Sales, Inc. v. Vander Werf,*
507 F. Supp. 2d 754 (S.D. Tex. 2007) ................................................................................................32

*Barany v. Van Haelst,*
459 F. App'x 587 (9th Cir. 2011) ......................................................................................................15

*Bencivenga Corp. v. ATF,*
No. 4:23-cv-3887, 2024 WL 2261960 (S.D. Tex. May 17, 2024) .............................................. 8, 10, 14

*Bennett v. Spear,*
520 U.S. 154 (1997) ........................................................................................................................27

*Best Loan Co. v. Herbert,*
601 F. Supp. 2d 749 (E.D. Va. 2009) ................................................................................................30

*Borchardt Rifle Corp. v. Cook,*
727 F. Supp. 2d 1146 (D.N.M. 2010) ................................................................................................22

*Buntion v. Quarterman,*
524 F.3d 664 (5th Cir. 2008) ............................................................................................................31

*CEW Props., Inc. v. DOJ,*
979 F.3d 1271 (10th Cir. 2020) .................................................................................................. 20, 30

*Citizens to Pres. Overton Park, Inc. v. Volpe,*
401 U.S. 402 (1971) ........................................................................................................................27

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.,*
526 U.S. 687 (1999) ........................................................................................................................34

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ........................................................................................................................25

*Crusader Gun Grp., LLC v. James,*
118 F.4th 648 (5th Cir. 2024) ....................................................................................................*passim*

*Crusader Gun Grp., LLC v. James,*
No. 4:22-cv-00906, 2023 WL 6194039 (S.D. Tex. Aug. 17, 2023) ..............................................*passim*

*Den ex dem. Murray v. Hoboken Land & Improv. Co.*,
  59 U.S. 272 (1985) .............................................................................................................35

*Denning v. Bond Pharmacy Inc.*,
  50 F.4th 445 (5th Cir. 2022).............................................................................................25

*Fairmont Cash Mgmt., L.L.C. v. James*,
  858 F.3d 356 (5th Cir. 2017) ....................................................................................*passim*

*Friedman's Inc. v. McCabe*,
  No. 3:10-00497, 2010 WL 11693212 (M.D. Tenn. Nov. 10, 2010) ....................................20

*Fulkerson v. Lynch*,
  261 F. Supp. 3d 779 (W.D. Ky. 2017) ...............................................................................33

*Fulkerson v. Sessions*,
  No. 17-5874, 2018 WL 3726278 (6th Cir. Mar. 23, 2018)..................................................33

*Gossard v. Fronczak*,
  206 F. Supp. 3d 1053 (D. Md. 2016) ..........................................................................10, 16

*Granfinanciera, S.A. v. Nordbert*,
  492 U.S. 33 (1989) ...........................................................................................................33

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ....................................................................................................26, 27

*In re Abbott*,
  117 F.4th 729 (5th Cir. 2024)............................................................................................34

*Jarkesy v. SEC*,
  803 F.3d 9 (D.C. Cir. 2015)..................................................................................................9

*Lewis v. Lumpkin*,
  844 F. App'x 781 (5th Cir. 2021) ......................................................................................31

*Lortz, Ltd. v. Gilbert*,
  451 F. App'x 503 (6th Cir. 2011) ......................................................................................15

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) .........................................................................................................33

*Mew Sporting Goods, LLC v. Johansen*,
  992 F. Supp. 2d 665 (N.D. W. Va. 2014), *aff'd*, 594 F. App'x 143 (4th Cir. 2015) .....................14, 22

*Morehouse Enters. LLC v. ATF*
  No. 3:23-cv-129, ---F. Supp. 3d---, 2024 WL 5063388 (D.N.D. Oct. 8, 2024), *appeal filed*, No. 24-3200 (8th Cir. Oct. 30, 2024) ............................................................24

*Morehouse Enters., LLC v. ATF,*
No. 3:23-cv-129, 2024 WL 708954 (D.N.D. Jan. 2, 2024)........................................................25, 26, 30

*Nat'l Mining Ass'n v. McCarthy,*
758 F.3d 243 (D.C. Cir. 2014) ........................................................................................................28

*Ngure v. Ashcroft,*
367 F.3d 975 (8th Cir. 2004).........................................................................................................26

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,*
584 U.S. 325 (2018) .........................................................................................................................35

*On Target Sporting Goods, Inc. v. Att'y Gen. of the U.S.,*
472 F.3d 572 (8th Cir. 2007) ................................................................................................... 29, 30

*Public Citizen, Inc. v. Bomer,*
115 F. Supp. 2d 743 (W.D. Tex. 2000).......................................................................................31

*Roth v. Rogers,*
732 F. Supp. 3d 700 (W.D. Ky. May 3, 2024), *appeal filed*, No. 24-5533 (6th Cir. June 4, 2024) .....21

*RSM, Inc. v. Herbert,*
466 F.3d 316 (4th Cir. 2006) .........................................................................................................22

*SEC v. Commonwealth Chem. Sec., Inc.,*
574 F.2d 90 (2d Cir. 1978) ............................................................................................................34

*SEC v. Jarkesy,*
603 U.S. 109 (2024) ................................................................................................................. 34, 35

*Service Arms Co. v. United States,*
463 F. Supp. 21 (W.D. Ok. 1978) ...............................................................................................20

*Shaffer v. Holder,*
No. 1:09-0030, 2010 WL 1408829 (M.D. Tenn. Mar. 30, 2010) ........................................33

*Simpson v. Att'y Gen. of U.S.,*
913 F.3d 110 (3d Cir. 2019) .........................................................................................................20

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016)..........................................................................................................................25

*Texas v. United States,*
809 F.3d 134 (5th Cir. 2015).........................................................................................................28

*Thomas v. Union Carbide Agric. Prods. Co.,*
473 U.S. 568 (1985)................................................................................................................. 34, 35

*Townson v. Garland,*
No. 1:22-00251-KD-N, 2022 WL17587259 (S.D. Ala. Nov. 17, 2022))................................33

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) ................................................................................................25

*U.S. Army Corps. of Eng'rs v. Hawkes Co.,*
578 U.S. 590 (2016) ................................................................................................27

*United States v. King,*
735 F.3d 1098 (9th Cir. 2013) ................................................................................11

*United States v. Texas,*
599 U.S. 670 (2023) ................................................................................................26

*Valley v. Rapides Parish Sch. Bd.,*
118 F.3d 1047 (5th Cir. 1997)................................................................................31

*Weaver v. Harris,*
486 F. App'x 503 (5th Cir. 2012) ..........................................................................33

*Wells v. James,*
No. 4:14-CV-1239, 2015 WL 5164971 (S.D. Tex. Sept. 2, 2015) ........................16

*Willingham Sports, Inc. v. ATF,*
415 F.3d 1274 (11th Cir. 2005)..............................................................................29

## Statutes

5 U.S.C. § 701(a).....................................................................................................25

5 U.S.C. § 704 ........................................................................................................27

18 U.S.C. § 922(g)(5)(B) .........................................................................................17

18 U.S.C. § 923(a) ....................................................................................................2

18 U.S.C. § 923(d)(1) ..............................................................................................14

18 U.S.C. § 923(e) ............................................................................................*passim*

18 U.S.C. § 923(f)(2) .................................................................................................3

18 U.S.C. § 923(f)(3) ............................................................................................ 3, 9

18 U.S.C. § 923(g)(1)(B)(ii)(I) ..................................................................................2

18 U.S.C. §§ 921, *et seq.*.............................................................................................2

## Rules

Fed. R. Civ. P. 56(a)....................................................................................................8

## Administrative and Executive Materials

27 C.F.R. § 478.11....................................................................................................10

27 C.F.R. § 478.124(c)(3)(iii) ...................................................................................18

27 C.F.R. § 478.73....................................................................................................16

27 C.F.R. § 478.73(a) .................................................................................................3

27 C.F.R. § 478.73(b).................................................................................................3

27 C.F.R. § 478.74.....................................................................................................3

27 C.F.R. §§ 478.71–78 ......................................................................................... 3, 30

28 C.F.R. § 0.130(a) ...................................................................................................2

Hearing Procedures Relating to Federal Firearms Licenses (2010R-2T),
   75 Fed. Reg. 48,362 (Aug. 10, 2010)....................................................................3

## Other Authorities

ATF, *Firearms Compliance Inspections*,
   https://perma.cc/AY7F-WUNG................................................................... 2, 3, 12

ATF, *Revocation of Firearms Licenses*,
   https://perma.cc/9FTZ-JG48...................................................................................3

The White House, *Fact Sheet: Biden-Harris Administration Announces Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public Safety* (June 23, 2021),
   https://perma.cc/ZFK7-8RRN ................................................................................4

**INTRODUCTION AND SUMMARY OF THE ARGUMENT**

Plaintiff OFM asks this Court to reverse ATF's decision to revoke OFM's federal firearms license, but the administrative record establishes that any and all of OFM's six willful violations of the Gun Control Act ("GCA") warrant revocation.

The GCA requires any person or entity engaged in the business of manufacturing and/or dealing in firearms to be licensed by ATF and to comply with all requirements of the GCA and its implementing regulations. Federal firearms licensees ("FFLs") who are found to have willfully violated any legal requirement may be subject to revocation or denial of license renewal. As relevant here, when applying for a license or license renewal, the applicant must list all "responsible persons" for the FFL. Individuals who were previously found to be willful violators of the GCA are not eligible to serve as responsible persons. OFM, however, failed to list Alan Aronstein as a responsible person on either OFM's application for an amended firearms license in 2019 or its license renewal application in 2020, even though Aronstein conducted all firearms transactions for OFM, purchased firearms for OFM, leased OFM's business premises, was responsible for OFM's employee payroll, and OFM operated out of the same location and employed the same staff as Aronstein's former firearms business. Further, Aronstein was not eligible to act as a responsible person for OFM because he was the sole responsible person for his previous business, which was found liable for thousands of willful violations of the GCA. Thus, ample evidence supports three violations of the GCA premised on Aronstein's role as an undisclosed and ineligible responsible person for OFM. The record also independently supports the three other violations cited in ATF's revocation of OFM's license.

None of Plaintiff's remaining arguments change that outcome. OFM has not properly challenged ATF's enforcement guidance document, and further, the agency's enforcement policy as set forth in that document is lawful. ATF's well-established process for conducting licensing inspections, hearings, and revocations accords with principles of due process. And a jury trial is not

1

required under the Seventh Amendment. Accordingly, the Court should grant Defendants' motion for summary judgment.

## NATURE AND STAGE OF THE PROCEEDING

OFM's complaint seeks *de novo* judicial review of the denial of its application for a Federal firearms license pursuant to 18 U.S.C. § 923(f)(3). Second Am. Compl. ("SAC") ¶ 353, ECF No. 58. Defendants hereby move for summary judgment on all claims in the SAC.

## STATEMENT OF THE ISSUES

1.      Whether any single willful violation of the GCA supports ATF's revocation of OFM's license.

2.      Whether any of OFM's other arguments provide a basis for relief.

## BACKGROUND

### I.      Statutory and Regulatory Background

The GCA, codified at 18 U.S.C. §§ 921, *et seq.*, gives the Attorney General the authority to approve federal firearm licenses and provides that "[n]o person shall engage in the business of importing, manufacturing, or dealing in firearms . . . until he has filed an application with and received a license to do so from the Attorney General." 18 U.S.C. § 923(a). Pursuant to that authority, ATF "may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by [ATF] under this chapter." 18 U.S.C. § 923(e).

ATF also has authority to periodically inspect federal firearms licensees ("FFLs") for compliance with the GCA's requirements. 18 U.S.C. § 923(g)(1)(B)(ii)(I); 28 C.F.R. § 0.130(a). ATF's industry operations investigators ("IOIs") inspect FFLs to ensure compliance with applicable laws and regulations. ATF, *Firearms Compliance Inspections*, https://perma.cc/AY7F-WUNG. Typically, an inspecting IOI will arrive at an FFL during business hours and will review its business operations,

evaluate internal controls, verify the FFL's compliance with applicable laws, review the FFL's records, and inventory the FFL's firearms, among other things. *Id.* If the IOI detects violations, they will create a final report of violations and discuss that report with the FFL.

"Whenever the Director has reason to believe that a licensee has willfully violated any provision of the Act" a notice of revocation of the license may be issued.  27 C.F.R. § 478.73(a). The FFL then has 15 days after receipt of the notice to request a hearing with the Director of Industry Operations ("DIO") in their ATF field division. *Id.* § 478.73(b); 18 U.S.C. § 923(f)(2). "During the hearing the licensee will have the opportunity to submit facts and argument[.]" 27 C.F.R. § 478.74. "[T]he licensee can be represented by an attorney and may bring employees and documentation to address the violations cited in the notice." ATF, *Revocation of Firearms Licenses*, https://perma.cc/9FTZ-JG48. A licensee also has "the right to question," *i.e.*, cross-examine, "all witnesses" at the hearing. Ex. B, OFM Initial Notice of Revocation, ATF0546. "If the DIO decides that the violations were willful and revocation is justified, . . . ATF sends a final notice of revocation [] to the licensee with a summary of the findings and legal conclusions[.]" ATF, *Revocation of Firearms Licenses* (emphasis omitted); 27 C.F.R. § 478.74; 18 U.S.C. § 923(f)(3); *see also id.* § 923(e) (summarizing procedure for revocation).[1]

If ATF sends a final notice of revocation following a hearing, the license holder may seek "de

---

[1] OFM misconstrues a 2010 General Notice regarding procedures at revocation hearings as a binding agency rule, SAC ¶¶ 164–68, 302–303 (quoting Hearing Procedures Relating to Federal Firearms Licenses (2010R-2T), 75 Fed. Reg. 48,362 (Aug. 10, 2010)), and incorrectly states that this General Notice reflects current ATF revocation procedures.  Regulations regarding ATF revocation proceedings are set out at 27 C.F.R. §§ 478.71–78, and the 2010 General Notice procedures are no longer operative. As the General Notice explains, it was intended to advise parties of the "current procedures" as of 2010, 75 Fed. Reg. at 48,362, and such procedures were later amended. As just one example, the "hearing officers" described in the 2010 Notice no longer exist; as a general matter, the "Director of Industry Operations" for a licensee's field division conducts revocation hearings. *See* 27 C.F.R. § 478.74; ATF, *Revocation of Firearms Licenses* (similar). The operative procedures were provided to OFM with the initial notice of revocation. *See* Ex. B at ATF0545-546.

novo judicial review of such . . . revocation" in federal district court to determine whether ATF was "authorized to . . . revoke the license." 18 U.S.C. § 923(f)(3); *see also, e.g.*, *Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 363 (5th Cir. 2017).

## II.    Current ATF Enforcement Policies and Guidance

Although ATF is authorized to revoke a license for any single willful violation of the GCA or its implementing regulations, ATF prioritizes the enforcement of violations that it determines impact public safety. In 2021, pursuant to President Biden and Attorney General Garland's Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public Safety, ATF adopted an enforcement policy by which it would seek to revoke the license of dealers the first time they willfully commit types of violations ATF determined would most impact public safety. Those violations include: (1) transferring a firearm to a prohibited person; (2) failing to run a required background check; (3) falsifying records, such as a firearms transaction form; (4) failing to respond to an ATF tracing request; or (5) refusing to permit ATF to conduct an inspection in violation of the law. *See* The White House, *Fact Sheet: Biden-Harris Administration Announces Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public Safety* (June 23, 2021), https://perma.cc/ZFK7-8RRN. This is known as the Enhanced Regulatory Enforcement Policy or "Zero-Tolerance" Policy ("Policy").

ATF employs an internal guidance document to assist ATF personnel as they conduct compliance inspection and take appropriate actions. Defendants will refer to this document as ATF's Administrative Action Policy or "AAP." ATF amended the AAP first in 2022 ("ATF-O-5370.1E") and again in 2023 ("ATF-O-5370.1F") to implement the Policy.[2] *See* Ex. D, ATF-O-5370.1E,

---

[2] For the Court's awareness, both orders have now been superseded by a version ATF-O-5370.1G, amended in August 2024. Because OFM's license was revoked when version ATF-O-5370.1F was in effect, and Plaintiffs' SAC explicitly challenges versions ATF-O-5370.1E and ATF-O-5370.1F, Defendants continue to address that version of the AAP and Policy.

ATF0515-526; Ex. C, ATF-O-5370.1F, ATF0527-539. The SAC purports to challenge ATF Order

5370.1E and/or ATF Order 5370.1F. The guidance makes clear that, as has always been the case,

ATF may only revoke federal firearms licenses for willful violations of the GCA and its implementing

regulations, and consistent with Fifth Circuit caselaw, it defines willfulness as "a purposeful disregard

of, or a plain indifference to, or a reckless disregard of a known legal obligation."[3] Ex. C at ATF0528.

## III.   Relevant Parties

Plaintiff OFM is a Texas corporation that previously held an active federal firearms license

first issued in 2003. SAC ¶ 3. Defendants are ATF, Merrick B. Garland, in his official capacity as the

Attorney General of the United States, Steven M. Dettelbach, in his official capacity as the Director

of the ATF, and Tanarra James, in her official capacity as the Director of Industry Operations for the

Houston Field Division of ATF.

On July 12, 2022, an ATF IOI attempted to conduct a compliance inspection at OFM. *See* Ex.

A, OFM Final Notice of Revocation, ATF0703-716. OFM's president and sole listed responsible

party, Ramiro Romo, told the investigator "that [Alan] Aronstein runs the show." *Id.* at ATF0706

(alteration in original); *see also* Ex. F, Ramiro Romo Signed Statement, ATF0777. Romo indicated that

Aronstein conducted all firearms transactions for OFM and told the investigator that ATF would have

to return when Aronstein was present. Ex. A at ATF0703-716; Exhibit F at ATF0777. ATF defines

"responsible person" as "in the case of a corporation, partnership, or association, any individual

possessing, directly or indirectly, the power to cause the direction of the management, policies, and

practices of the corporation, partnership, or association, insofar as they pertain to firearms." Ex. K,

Blank ATF Form 5300.38 Application for an Amended Federal Firearms License, ATF0729.

Aronstein was known to ATF because he was the responsible person for Crusader Gun

---

[3] Version ATF-O-5370.1G defines willfulness in the same manner.

Group, which operates at the same address as OFM. Ex. A at ATF0706-707. OFM subleases its office space from Crusader Gun Group. Ex. A at ATF0707. Aronstein is ineligible to be a responsible person for an FFL because he was the sole responsible person for three prior firearms businesses that were found to have willfully committed thousands of violations of the GCA. Ex. A at ATF0708; *Crusader Gun Grp., LLC v. James*, 118 F.4th 648, 650 (5th Cir. 2024). Because of its association with Aronstein, Crusader was denied a federal firearms license, a decision upheld both by another court in this district and the Fifth Circuit. *Id.*; *see also Crusader Gun Grp., LLC v. James*, 2023 WL 6194039, at *5 (S.D. Tex. Aug. 17, 2023).

ATF returned to conduct its inspection on August 18, 2022. Following that inspection, in June 2023, ATF notified OFM that its license "may be revoked" because ATF found evidence that OFM had committed eight willful violations of firearms laws. *See* Ex. B at ATF0540-0546. Specifically, ATF cited the following violations in its initial notice of revocation:

(1) On two occasions, OFM knowingly made a false statement or representation in applying for a license by failing to disclose that one Alan Louis Aronstein was a "[r]esponsible [p]erson" at OFM, in violation of 18 U.S.C. § 924(a)(1) and 27 C.F.R. § 478.128(a).

(2) Aronstein was an unlisted responsible person for OFM, which rendered OFM ineligible for a license under 18 U.S.C. § 923(e) and 27 C.F.R. § 478.73.

(3) OFM did not give timely written notice to ATF when OFM granted Aronstein a position of control in 2018, in violation of 27 C.F.R. § 478.54.

(4) OFM willfully sold a firearm to a person who OFM knew or should have known "was subject to Federal firearms disabilities" in violation of 18 U.S.C. § 922(d) and 27 C.F.R. § 478.99(c).

(5) and (6) OFM violated record-keeping requirements on four occasions in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. §§ 478.123(a)–(b).

(7) and (8) OFM failed to properly complete or execute ATF Forms 4473 on ten occasions in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(c)(1), (5).

*See* Ex. B at ATF0541-543.

ATF further notified OFM that it could request a hearing to address the potential revocation

6

of OFM's license and explained that OFM's license would "remain in effect pending the outcome of the hearing." Ex. B at ATF0540. OFM requested an administrative hearing, and then sought an extension of the hearing date, which was granted. Ex. G, Hearing Request and Scheduling Documents, ATF0891; ATF0919-928. OFM's hearing occurred on November 16, 2023. Ex. A at ATF0703. As is standard practice, the Director of Industry Operations for the Houston Field Division, Tanarra James, presided over the hearing. Ex. A at ATF0705. On January 23, 2024, DIO James issued the final notice revoking OFM's federal firearms license, finding that OFM acted with plain indifference or purposeful disregard as to violations 1–4, 6, and 8. Ex. A at ATF0705-712. OFM received that notice on January 29, 2024, SAC ¶ 226, and the revocation became effective on February 13, 2024. Ex. A at ATF0706. ATF subsequently agreed to a partial stay of the revocation pending this Court's resolution of OFM's motion for preliminary injunction. *See* Joint Notice and Mot., ECF No. 35. The partial stay remained in effect until this Court denied OFM's preliminary injunction motion on May 17, 2024. At that time, the revocation became effective. *See also* Defs.' Resp. to Pl.'s Letter, ECF No. 54.

## IV.    This Lawsuit

OFM filed the present action on October 12, 2023, bringing ten purported claims. *See* Compl., ECF No. 1. OFM filed a motion for a temporary restraining order on October 19, 2023, requesting that the Court enjoin ATF from holding OFM's license revocation hearing. *See* Pl.'s Mot. for Temporary Restraining Order, ECF No. 11. After a hearing, the Court denied OFM's motion. Order, ECF No. 20. OFM filed an amended complaint on February 6, 2024, adding challenges to ATF's final notice of revocation. *See* FAC, ECF No. 31. On February 14, 2024, Plaintiff filed a second motion for a temporary restraining order, requesting that the Court order ATF to "stay" the revocation of OFM's license. Mot. for Temporary Restraining Order, ECF No. 33. On February 16, 2024, the parties filed a joint notice and motion to advise the Court of recent developments and propose a schedule for future proceedings. ECF No. 35. ATF agreed to partially stay the revocation pending the Court's

resolution of a preliminary injunction motion, and OFM withdrew its motion for a temporary restraining order.

OFM filed an opposed motion for a preliminary injunction on February 26, 2024. Pl.'s Mot. Prelim. Inj., ECF No. 37. After a hearing, the Court denied the motion as well as OFM's subsequent motion for reconsideration. Mem. & Order, ECF No. 45; Order, ECF No. 52. The Court held that OFM had not demonstrated a likelihood of success on the merits of its claims because "there is ample evidence in the record that Aronstein *did* serve as a responsible person for OFM," and the parties agree that "Aronstein has previously committed willful violations of the GCA and that he is therefore unable to serve as a responsible person for an FFL holder such as OFM." *Bencivenga Corp. v. ATF*, 2024 WL 2261960, at *4 (S.D. Tex. May 17, 2024) (Ellison, J.), ECF No. 45. The Court also held that OFM had not demonstrated that it would suffer irreparable injury in the absence of an injunction, and it is in the public interest to ensure that the GCA is followed so that firearms do not find their way into the wrong hands. *Id.* at *5-6.

On October 15, 2024, OFM filed a Second Amended Complaint bringing twenty-eight purported claims. *See* SAC, ECF No. 58. Counts I to VI appear to challenge ATF's allegations in ATF's initial notice of revocation. SAC ¶¶ 176–220. Counts VII to XXVI generally challenge ATF's factual findings in the final notice. *Id.* ¶¶ 226–301. Count XXVII appears to seek a declaratory judgment that DIO James improperly presided over OFM's revocation hearing. *Id.* ¶¶ 302–322. Count XXVIII asserts that OFM's license revocation hearing violated due process. *Id.* ¶¶ 323–340.[4] Defendants answered the SAC on October 29, 2024, ECF No. 59, and now move for summary judgment on all claims.

---

[4] Count XXXIX is moot as it relates to OFM's arguments before ATF conducted its administrative hearing. *See* SAC ¶¶ 341–352.

8

**LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). ATF is entitled to summary judgment on claims challenging its federal firearms revocation or application denial determination if, after *de novo* judicial review, the Court determines that ATF was "authorized" to revoke or deny the application. *See Crusader Gun Grp.*, 118 F.4th at 651; *Fairmont Cash Mgmt.*, 858 F.3d at 360; 18 U.S.C. § 923(f)(3). A court reviewing a licensing determination under 18 U.S.C. § 923(f)(3) "may enter judgment solely based upon the administrative record." *Fairmont Cash Mgmt.*, 858 F.3d at 3624 (citation omitted).[5]

**ARGUMENT**

**I.     Any one of six willful violations of the GCA support the revocation of OFM's federal firearms license.**

The full administrative record supports that ATF's revocation and denial of the renewal of OFM's federal firearms license was authorized under the applicable statutes and regulations.[6]

The exclusive means by which OFM may obtain judicial review of its license revocation is through 18 U.S.C. § 923(f)(3)'s statutory right to *de novo* review in federal district court. *See Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) ("If a special statutory review scheme exists, however, it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies." (citation omitted)). Section 923(f)(3)'s right of review

---

[5] Defendants move for summary judgment based on the entirety of the administrative record, filed at ECF Nos. 60 through 60-14. The exhibits filed in support of this motion are excerpts of that record and are filed separately for convenience of reference.

[6] The final notice of revocation indicates that subsequent to the administrative hearing, OFM filed an application for the renewal of its license, which automatically converted the administrative action from a license revocation to a denial of a license renewal. *See* Ex. A at ATF0705 n.1. The final notice indicates that this conversion makes no practical difference. *Id.* Accordingly, this motion primarily refers to the administrative action as a license revocation for purposes of consistency.

is limited to whether ATF was authorized to revoke or deny the license. *See Fairmont Cash Mgmt.*, 858 F.3d at 362 ("In reviewing the ATF's decision, the question is whether it was authorized to revoke the petitioner's FFL."). Under the GCA, "[a] single willful violation authorizes the ATF to revoke the violator's FFL, regardless how severe[.]" *Id.* Accordingly, the question for this Court is simple: did OFM commit a single willful violation of the GCA? If so, that is the end of the inquiry. Defendants discuss the relevant violations in turn.

### A. Violations Related to Alan Aronstein

Three violations cited in ATF's final notice relate to Alan Aronstein being an unlisted responsible person for OFM. These violations are as follows: (1) OFM knowingly made a false statement or representation in applying for a firearms license by omitting Aronstein as a responsible person, in violation of 18 U.S.C. § 924(a)(1) and 27 C.F.R. § 478.128(a); (2) Aronstein is a prior willful violator of the GCA, and as Aronstein is an unlisted responsible person for OFM, OFM is a willful violator of the GCA subject to revocation under 18 U.S.C. § 923(e) and 27 C.F.R. § 478.73; and (3) OFM willfully failed to give written notification to the Chief, Federal Firearms Licensing Center within 30 days of an actual or legal change in control of the corporation or association holding the license by failing to add Aronstein as a person in a position of control, in violation of 27 C.F.R. § 478.54. *See* Ex. A at ATF0706-710.

#### i. Aronstein is a "responsible person."

Two violations are premised on Aronstein being a responsible person for OFM, and as this Court previously concluded, "there is ample evidence in the record that Aronstein did serve as a responsible person for OFM." *Bencivenga Corp.*, 2024 WL 2261960, at *4 (emphasis omitted). For purposes of the GCA, the term "responsible person" means, in the case of a corporation, partnership, or association, "any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of [a] corporation, partnership, or association,

10

insofar as they pertain to firearms." *Crusader Gun Grp.*, 118 F.4th at 652 (quoting *Gossard*, 206 F. Supp. 3d at 1061); *Crusader Gun Grp.*, 2023 WL 6194039, at *4; 27 C.F.R. § 478.11 (same). "Simply put, a responsible person is the one who has the ability to control a company's firearms." *Bencivenga Corp.*, 2024 WL 2261960, at *3. Responsible persons are not necessarily limited to the owners or officers of a company and include individuals who have the ability to control the company's firearms-related operations. *See United States v. King*, 735 F.3d 1098, 1105 (9th Cir. 2013) (explaining ATF must be able to "look beyond the corporate structure, to related persons and entities able to direct the applicant's operation and management" (citation omitted)).

At the administrative hearing, the government submitted forty-nine exhibits and called one witness, Tommy Gray, who was the IOI who inspected OFM's premises in 2022. *See generally* Ex. E, OFM Revocation Hearing Transcript, ATF0578-702; *see also* ECF No. 60-8 at ATF0717-984 (Government Hearing Exhibits). Of that evidence, perhaps the most important is a written signed statement from OFM's president and sole listed responsible person, Ramiro Romo. Ex. F at ATF0777. In July 2022, IOI Elaine Mata attempted to initiate a compliance inspection of OFM's premises, but Romo told IOI Mata that the inspection could not take place until Aronstein was present, because "Aronstein runs the show." Ex. E at ATF0603-606; Ex. F at ATF0777. IOI Mata agreed to postpone the inspection, and Romo and OFM's secretary Jessica Portillo signed the following written statement:

> SIOI Mata attempted to conduct a full compliance inspection at the business premises of Bencivenga Corporation dba OFM Corp. SIOI Mata rang the doorbell and was greeted by administrative assistant, Jessica Portillo. SIOI Mata requested to see the owner of OFM Corp. and was told he was not at the licensed premises. SIOI Mata presented her card and was invited into the business premises. Mrs. Portillo stepped to the back office and Mr. Ramiro Romo, President of OFM Corp greeted SIOI Mata.
>
> SIOI Mata explained she was there to conduct a full compliance inspection. Mr. Romo indicated that Mr. Alan Aronstein was out of town and SIOI Mata would have to return to the premises upon his return. SIOI [Mata] verified that Mr. Romo was the President of OFM Corp. and the sole person listed as a responsible person on the license. Mr. Romo indicated that Mr. Alan Aronstein conduct[s] all firearm transactions for the business. Mr. Romo contacted Mr. Aronstein via telephone. SIOI Mata spoke to Mr. Aronstein and made an appointment to conduct the inspection on

11

7/27/2022. Mr. Alan Aronstein indicated it should take no longer than two days since the business was small. SIOI Mata thanked Mr. Aronstein and left the business premises.

Ex. F at ATF0777. The signed statement indicates that Aronstein possessed the power to direct OFM's management, policies, and practices related to firearms, as he was the only person sufficiently familiar with OFM's firearms transactions to facilitate an ATF compliance inspection, whereby ATF reviews business operations, evaluates a licensee's internal controls and security measures, verifies compliance with state and local laws, conducts a physical inventory of the firearms, and reviews the acquisition & disposition record and other ATF forms. ATF, *Firearms Compliance Inspections*, https://perma.cc/AY7F-WUNG. OFM appears to acknowledge these facts in its pleading. *See* SAC ¶ 179 ("[Aronstein] handles most if not all sales for OFM."). Additionally, the signed statement demonstrates that those employed at OFM, like Portillo, viewed Aronstein as the "owner" of OFM.

The written signed statement is not the only evidence demonstrating that Aronstein was a responsible person. On August 18, 2022, IOI Tommy Gray returned to OFM to initiate a compliance inspection. And following that inspection, on September 30, 2022, IOI Gray spoke with Aronstein, a conversation he documented. Ex. E at ATF0607–608. IOI Gray testified at ATF's administrative hearing that during that conversation, Aronstein explained that:

> [Mr. Aronstein] and Mr. Romo are operating a joint venture based on a verbal agreement . . . . Mr. Aronstein stated he also purchases firearms through his Interarms account and with an American Express Credit Card for Bencivenga Corporation. Mr. Aronstein stated that he conducts payroll operations through his Tex Products account for Bencivenga Corporation employees. . . . Mr. Aronstein also stated that Bencivenga Corporation is staffed by the same employees that he had with High Standard, and they were operating from the same location.

Ex. E at ATF0608. That Aronstein and Romo are operating a "joint venture," that Aronstein purchases firearms for OFM, that Aronstein conducts all payroll operations through his own payroll account for OFM employees, and that OFM is staffed by Aronstein's former employees and operates from Aronstein's former business location, collectively support that Aronstein is not merely an

12

"unpaid consultant" or "clerk." *See* SAC ¶ 179. Additionally, the following month, IOI Gray spoke to Romo, who explained that he and Aronstein had been working together since 2018 and he wanted to continue that business arrangement. Ex. E at ATF0610.

Aronstein is also responsible for OFM's business premises. IOI Gray testified during the administrative hearing that, during his inspection of OFM, he obtained copies of a commercial lease agreement, a consent-to-sublease agreement, and a sublease agreement. *See* Ex. H, Lease and Sublease Documents, ATF0779-808. These agreements show that OFM's business premises are leased by Aronstein's company, Crusader Gun Group, LLC, at a rate of approximately $4,500 per month, and the premises are subleased to OFM at a rate of $10 per month, and have been since 2019. *See* Ex. H at ATF0779, ATF0805; Ex. E at ATF0611-615, ATF0683-687. IOI Gray also testified that Aronstein maintains an office at the premises and pays the utilities for the office space. Ex. E at ATF0614-615. Charges for the building security system are covered under the original tenant lease agreement, which is held by Crusader (i.e., Aronstein). Ex. E at ATF0615.

OFM presented little evidence at the administrative hearing to rebut the fact that Aronstein was a responsible person. OFM submitted the same signed declarations by Romo and Aronstein it later submitted in support of its motion for a temporary restraining order and in this case, but those declarations do not set forth facts contradicting that Aronstein is a responsible person; they merely deny that he is. *See* Ex. I, Plaintiff's Declarations, ATF1387-1394 (Romo October 2023 Decl.); ATF1412-1415 (Aronstein October 2023 Decl.). OFM cross-examined IOI Gray. Ex. E at ATF0633-671. And Romo testified. Ex. E at ATF0672-701. The effect of that testimony is that Romo denied that Aronstein was a responsible person, and stated that by "joint venture," he actually meant that Aronstein would receive a commission if he finds a buyer for Romo's business. Ex. E at ATF0673.

On cross-examination, Romo also made a number of significant concessions that further support that Aronstein was a responsible person. Romo stated that he "fe[lt] more comfortable with

13

Mr. Aronstein being [present]" for the inspection, Ex. E at ATF0684; that Aronstein pays the employees from Aronstein's prior company that no longer has a firearms license because "[i]t's all the same thing," Ex. E at ATF0684; that Aronstein pays approximately $6,000 of the rent of OFM's business premises while Romo subleases for $10, Ex. E at ATF0685; that Aronstein does not currently have a firearms license, Ex. E at ATF0685; that Romo knew Aronstein was found to be a willful violator of the GCA, Ex. E at ATF0686; and that Romo was aware that Aronstein cannot currently have a firearms license, Ex. E at ATF0686.

To recap: Aronstein is responsible for most if not all of OFM's firearms transactions and OFM required him to be present for ATF's firearms compliance inspection; Aronstein purchases firearms for OFM through his own Interarms account with his own credit card; OFM operates out of the premises of Aronstein's former firearms company with all the same staff as that former company; Romo is responsible for $10 in rent each month for those premises, while Aronstein is responsible for between $4,500 and $6,000; Aronstein conducts all of OFM's payroll operations through his own payroll account; and both Aronstein and Romo have at various points described OFM as their joint venture. This evidence "plainly" demonstrates that Aronstein "has the ability to control OFM's firearm management." *Bencivenga*, 2024 WL 2261960, at *4; *see also Mew Sporting Goods, LLC v. Johansen*, 992 F. Supp. 2d 665, 679–80 (N.D. W. Va. 2014) (holding manager acted as "responsible person" when employees referred to her as the owner, and she completed almost all firearm sales, placed the orders for firearms, filled out the firearms transaction forms, and drafted payroll checks, even though the named responsible person argued he "maintained the final word on many of the company's major decisions"), *aff'd*, 594 F. App'x 143 (4th Cir. 2015).

ii.     Aronstein is not eligible to serve as a "responsible person" for an FFL.

As this Court previously explained, "[i]f an FFL holder has previously committed willful violations of the GCA, that FFL holder and all of its responsible persons may not hold an FFL or

14

serve as a responsible person for a different FFL holder." *Bencivenga Corp.*, 2024 WL 2261960, at *3; *see also* 18 U.S.C. § 923(e) (permitting license revocation "if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter"); *id.* § 923(d)(1)(C) (permitting denial of license if "applicant" has "willfully violated any of the provisions of this chapter or regulations issued thereunder"); *Crusader Gun Grp.*, 2023 WL 6194039, at *4 (holding license "applicant" includes "responsible person"); *2nd Amend. Guns, LLC v. ATF*, 2014 WL 7051753, at *7 (D. Or. Dec. 12, 2014) ("The company, acting through its officers, willfully violated the [GCA] and all 'responsible persons' named on [the] license are personally accountable for those violations."). Indeed, in *Crusader*, the Fifth Circuit explained that "by the terms of § 923(d)(1)(C), ATF is authorized to reject the application of an entity . . . if the individual managing and directing the entity—the 'responsible person'—has willfully violated federal firearms laws," noting that "every circuit court to have considered the question agrees with this interpretation." 118 F.4th at 652 (citing *Barany v. Van Haelst*, 459 F. App'x 587, 588 (9th Cir. 2011); *Lortz, Ltd. v. Gilbert*, 451 F. App'x 503, 504 (6th Cir. 2011)).

Aronstein is not eligible to serve as a responsible person for an FFL because he was the sole responsible person for three prior firearms businesses who were found to have willfully committed thousands of violations of the GCA. The Fifth Circuit recently held that "there is no doubt that Aronstein committed at least one, and likely more, willful violations." *Crusader Gun Grp.*, 118 F.4th at 654. In the 2000's, Aronstein was the sole responsible person for three firearms businesses: Tex-Products, High Standard Manufacturing, and Firearms International. *Crusader Gun Grp.*, 2023 WL 6194039, at *1; *see also* Ex. J, Aronstein Licensing History, ATF0819-838 (High Standard). In 2008, ATF inspected those businesses and found that they had willfully committed thousands of violations of federal firearms laws and regulations, including over 6,000 record-keeping errors; failure to report the theft or loss of over 200 firearms; knowing possession of eight unlawful machine guns; and failure

15

to serialize firearms frames. *Crusader Gun Grp.*, 2023 WL 6194039, at *1.[7] ATF decided to revoke these licenses; the revocation was ultimately uncontested, and the businesses ceased operating and surrendered their licenses. *Id.* Because Aronstein was the sole responsible person for those businesses, their violations "are properly attributable to Aronstein." *Id.* at *5.

>  iii.  ATF was authorized to revoke OFM's license for any of the three Aronstein-related violations.

Having established that Aronstein was in fact a responsible person, but was not eligible to be, Defendants turn to OFM's specific violations that follow from that factual determination.

*First*, by omitting Aronstein as a responsible person, OFM knowingly made a false statement or representation in applying for a firearms license, in violation of 18 U.S.C. § 924(a)(1) and 27 C.F.R. § 478.128(a). As set forth above, Aronstein served as a responsible person. There is no dispute that OFM's application for an amended federal firearms license from 2019 and OFM's license renewal application from 2020 did not list Aronstein as a responsible person. *See* Ex. L, OFM's Licensing Applications, ATF0725-726, ATF0739-741. Omitting Aronstein was therefore a materially false representation warranting the revocation or denial of a federal firearms license. *See Wells v. James*, No. 4:14-CV-1239, 2015 WL 5164971, at *2 (S.D. Tex. Sept. 2, 2015) (Ellison, J.) ("[W]illfully failing to disclose material information in an application for an FFL—including the fact that an individual[ ] legally ineligible to hold a license would serve as a responsible person in the firearms business—is sufficient grounds for the denial of a license under [the GCA]."); *Gossard* , 206 F. Supp. 3d at 1064–65 (granting summary judgment and concluding ATF was authorized to deny application for firearms license because application's omission of responsible person was willful omission of material information).

---

[7] Defendants have included the Westlaw citation to this decision, but this decision was also part of the administrative record in this case. *See* ECF No. 60-9 at ATF0867-879.

*Second*, as established by the *Crusader* decision, Aronstein is a willful violator of the GCA and as such, OFM is a willful violator of the GCA subject to revocation/denial. 18 U.S.C. § 923(e); 27 C.F.R. § 478.73. "Violations of the GCA that Aronstein committed through earlier businesses enterprises are properly attributable to Aronstein and his new business enterprise—[OFM]." *Crusader Gun Grp.*, 2023 WL 6194039, at *5. "ATF was authorized to deny" OFM's application or revoke OFM's license "based upon even a single violation." *Id.*; *see also 2nd Amend. Guns*, 2014 WL 7051753, at *7 ("There is no reasonable question that 2nd Amendment Guns' acts are reasonably imputed to its officers and vice versa." (emphasis omitted)). OFM has not contested the violations or willfulness of the violations of Aronstein's prior business in this action or in the *Crusader* case. *See also Crusader Gun Grp.*, 2023 WL 6194039, at *5 ("Aronstein's repeated violations in spite of ATF's warnings and instructions show that these violations were willful.").

And *third*, OFM willfully failed to give written notification to the Chief, Federal Firearms Licensing Center within 30 days of an actual or legal change in control of the corporation or association holding the license in violation of 27 C.F.R. § 478.54. Indeed, it never provided that mandatory notification. As set forth above, Aronstein assumed a position of control of OFM in approximately 2018, but there is no dispute that OFM never notified ATF of this change. *See* Ex. E at ATF0620.

Any and all of these violations was sufficient basis for ATF to revoke OFM's license.

### B.      Remaining Violations

ATF was also independently authorized to revoke OFM's licenses based on three other violations.

*First*, OFM willfully sold or disposed of a firearm to a person OFM knew or had reasonable cause to believe was subject to federal firearms disabilities, in violation of 18 U.S.C. § 922(d) and 27 C.F.R. § 478.99(c). IOI Gray testified at the administrative hearing that Earle Seymour Wainstein filled

out a Firearms Transaction Record, ATF Form 4473, dated June 10, 2022. Ex. E at ATF0621-625. Wainstein answered "yes" to Item 12.1.1, which indicates he is an alien who was admitted to the United States under a non-immigrant visa. *See* Ex. M, Wainstein Form 4473, ATF0945-0948. Such persons are subject to federal firearms disabilities under 18 U.S.C. § 922(g)(5)(B) unless a specific exemption applies. Importantly, Wainstein did not indicate on the Form 4473 that he fell within any of the exceptions to the prohibition, and OFM neither indicated that Wainstein presented the type of documentation establishing the exception to the prohibition, nor attached a copy of such documentation, both of which are required by the GCA's implementing regulations. *See* 27 C.F.R. § 478.124(c)(3)(iii); *see also* Ex. M at ATF0945-0948. IOI Gray testified that he confirmed with the Texas Parks and Wildlife license department and determined that Wainstein did not have a valid hunting license from the State of Texas, which if proper documentation had been provided, might have been a potentially applicable exemption. Ex. E at ATF0624; Ex. N, ATF Email to Texas Parks & Wildlife, ATF0949. Still, the instructions on the Form 4473 itself plainly state that when someone indicates that they fall within an exception to the prohibition, the FFL must add the supporting documentation. *See* Ex. O, Blank Form 4473, ATF0983.

*Second*, on three occasions, OFM willfully failed to timely and/or accurately record the disposition of a firearm, in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.123(b). During his inspection, IOI Gray discovered three open dispositions in OFM's acquisition and disposition record for which the firearms were not located on the premises. IOI Gray testified during the hearing that Romo had taken personal possession of two of the firearms, but OFM had not logged their dispositions in the records, as required under the GCA. OFM could not locate the third firearm, and as a result, OFM needed to prepare a theft loss report following the inspection. *See* Ex. E, ATF0626-628; Ex. P, Acquisition and Disposition Records, ATF0959-964; Ex. Q, Firearms Theft Loss Report, ATF0975-976. OFM failed to do so.

18

*Lastly*, on two occasions, OFM willfully failed to sign and/or date the Firearms Transaction Record, ATF Form 4473, certifying that the licensee does not know or have reason to believe the transferee is disqualified by law from receiving the firearm described on the Form, in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(c)(5). In the first instance, Earle Wainstein initially completed an ATF Form 4473 on June 10, 2022. OFM received a "delay" response when it contacted the National Instant Criminal Background Check System ("NICS"), indicating that it could not transfer the firearm until it either received a "proceed" response or at least three business days elapsed. *See* Ex. M at ATF0945-947; Ex. E at ATF0631-632. Once Wainstein returned to the store, he recertified his answers on June 28, 2022. Ex. M at ATF0947. Aronstein, however, signed the Form 4473 indicating that he transferred the firearm to Wainstein on June 10, 2022—before OFM received a "proceed" response or three days had passed. Ex. M at ATF0947. In the second instance, Jessica Portillo initially completed the Form 4473 on June 24, 2022. *See* Ex. R, Jessica Portillo Form 4473, ATF0951-953. After OFM received a "delay" response from NICS, Portillo recertified her responses on June 28, 2022. Ex. R at ATF0953. However, Aronstein signed and dated the Form as if the firearm was transferred on June 24, 2022, again, before receiving a "proceed" response or at least three business days had elapsed. Ex. R at ATF0953. IOI Gray testified that in both instances, Aronstein transferred a firearm and put an incorrect transfer date on the Form 4473. Ex. E at ATF0631-632.

### C.    Willfulness

The record also supports that all six violations were willful within the meaning of the GCA. "A license holder commits a willful violation under § 923 if the licensee knew of his legal obligations and purposefully disregarded or was plainly indifferent to" those obligations. *Fairmont Cash Mgmt.*, 858 F.3d at 362.

The individual circumstances of the violations support a finding of willfulness on the part of OFM. To begin, the evidence demonstrates that Romo, OFM's sole-listed responsible person, clearly

19

knew of each relevant legal obligation. Romo is not a newcomer to the firearms industry. He has worked in the firearms business for over thirty years. *See* Ex. S, Signed Acknowledgment Forms, ATF0743-0766 (acknowledgments of ATF rules and procedures signed by Romo dating back to 2002); Ex. E at ATF0615-617 (IOI Gray testifying that Romo has been in the firearms business since 1990); Ex. T, Armas Int'l Licensing History, ATF0809-813 (license registration report of Armas International showing license was issued in 1990 and Romo was listed responsible person). Courts have found such experience supports a finding of willfulness. *See Friedman's Inc. v. McCabe*, 2010 WL 11693212, at *6 (M.D. Tenn. Nov. 10, 2010) (considering licensee's experience as relevant to willfulness determination); *Service Arms Co. v. United States*, 463 F. Supp. 21, 25 (W.D. Ok. 1978) (finding violation willful when license holder's "experience and familiarity with the requirements of the [GCA] and regulations are considered"). Romo himself attests, and the SAC confirms, that ATF has reviewed the relevant federal firearms laws and regulations with Romo for each of his businesses, including OFM, several times during various inspections. *See* SAC ¶ 173 ("[T]he laws and regulations issued under the GCA were reviewed with License President and sole listed responsible person, [Romo] on December 23, 2002, April 22, 2008, May 26, 2020. [sic], August 16, 2012, October 20, 2016, December 9, 2019 and August 30, 2022."); Pls.' Ex. 19 to SAC (Romo attesting to the same), ECF No. 58-19. Courts have found that a licensee's review of GCA requirements with ATF officials and signing of an Acknowledgment of Federal Firearms Regulations supports a finding a willfulness. *See CEW Props., Inc. v. DOJ,* 979 F.3d 1271, 1239 (10th Cir. 2020) (finding licensee's "acknowledgments of his responsibility to inform himself of his legal obligations" and review of GCA requirements with ATF supported finding of willfulness); *Simpson v. Att'y Gen. of U.S.*, 913 F.3d 110, 114–15 (3d Cir. 2019) (finding willfulness where record showed licensee "met with ATF officials three times about his FFLs and, at the conclusion of each meeting, he signed a form acknowledging that he discussed various

20

regulatory topics with the ATF."). On this basis alone, OFM could be found to have knowledge of the relevant legal obligations.

But even apart from that, the facts of this case support that OFM had particular knowledge as to the specific legal obligations at issue. For instance, the obligation relevant to the first Aronstein violation—that all responsible persons be listed on the license or added during a subsequent renewal application—is included on the licensing forms Romo submitted and signed numerous times. *See* Ex. L at ATF0740 (checking "no" box to question "Are there any new responsible persons to be added . . . [to] the license? If yes, please attach a separate sheet of paper to provide their identifying information[.]"); Ex. K at ATF0728-729 (blank ATF Form 5310.11 instruction sheet defining "Responsible Person" as "In addition to a Sole Proprietor, a Responsible Person is, in the case of a corporation, partnership, or association, any individual possessing directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of the corporation, partnership, or association, insofar as they pertain to firearms."); *compare Roth v. Rogers*, 732 F. Supp. 3d 700, 707 (W.D. Ky. May 3, 2024), *appeal filed*, No. 24-5533 (6th Cir. June 4, 2024) (finding failure to include business partner on FFL application was willful when the "application defined 'responsible person'" and at the administrative hearing, the applicant denied partner would possess direct or indirect power to direct or cause the direction of the management, policies, and practices of the FFL). The same goes for the second violation. *See* Ex. L at ATF0726 ("As required by 18 U.S.C. § 923(d)(1), I certify that: . . . b. The applicant has not willfully violated any of the provisions of the GCA or 27 CFR, part 478"). And the first form mentions the legal obligation underlying the third violation. *See* Ex. L at ATF0725 ("Are there any changes in the business structure of the FFL's operations? (*Change of Control, Change of Partnership, etc.*) If yes, specify change on a separate sheet of paper. You may need to file a new ATF Form 7, Application for Federal Firearms License.").

21

Notably, at no time during the administrative hearing, nor in any filing for this action has Romo argued that he did not have knowledge of these requirements; instead, OFM has merely argued Aronstein did not act as a responsible person. And if anything, Romo's own testimony demonstrates that he understands the legal obligation to disclose responsible persons. *See, e.g.*, Ex. 19 to SAC, Romo Decl., ¶ 13 ("I am the sole person that possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of the corporation, partnership, or association pertaining to firearms."); *see also id.* ¶¶ 14, 16–18, 27–28.

The facts also demonstrate that, despite knowledge of those obligations, Romo was plainly indifferent to them. Romo testified at the ATF hearing that he knew Aronstein does not currently have a federal firearms license, that he knew Aronstein was a prior willful violator of the GCA, and that Aronstein currently is not eligible to hold a federal firearms license. *See* Ex. E at ATF0684-686. Still, Romo permitted Aronstein to purchase firearms for OFM, "handle[] most if not all sales for OFM," SAC ¶ 179; ECF No. 58-19, and indeed, "run[] the show." Ex. E at ATF0603. But perhaps this is unsurprising, given that Romo also testified that Aronstein's previous company and OFM are "all the same thing." Ex. E at ATF0684. Plain indifference is sufficient to satisfy the willfulness requirement, particularly where omissions are concerned. *See RSM, Inc. v. Herbert*, 466 F.3d 316, 321–22 (4th Cir. 2006) ("[A] court may infer willful omission from a defendant's plain indifference to a legal requirement to act if the defendant (1) knew of the requirement *or* (2) knew generally that his failure to act would be unlawful."); *see also Borchardt Rifle Corp. v. Cook*, 727 F. Supp. 2d 1146, 1163 (D.N.M. 2010) (holding willfulness may be inferred based on circumstantial evidence). In any case, as set forth above, the circumstances suggest that Romo intentionally omitted Aronstein as a responsible person *because* he knew Aronstein was not eligible to serve in that capacity. *Compare Mew Sporting Goods, LLC*, 992 F. Supp. 2d 665 (affirming revocation where license holder failed to list as a responsible person the business manager who performed the business's key functions because of manager's prior

22

license revocation). And regardless of the motivations for omitting Aronstein's name, there is no dispute that both Aronstein and Romo knew their legal obligations and purposefully disregarded or were plainly indifferent to those obligations, and thus, ample evidence supports that the violations involving Aronstein were willful.

Facts in the administrative record likewise demonstrate that OFM had knowledge of the other applicable legal obligations and was plainly indifferent to them. With regards to the fourth violation involving Mr. Wainstein's ATF Form 4473, the relevant legal obligations are set forth clearly on the Form 4473 itself. The instructions on that form state that "An alien admitted to the United States under a nonimmigrant visa …. [M]ust answer 'yes' to [Question 21.1] and provide the additional documentation under question 26.d to establish they are excepted from the nonimmigrant alien prohibition." Ex. A at ATF0983. Although Wainstein answered "yes," to Question 12.1.1 on his Form 4473, indicating he is an alien admitted to the US under a non-immigrant visa, Wainstein did not indicate on the Form that he fell within one of the exceptions to the nonimmigrant alien prohibition, nor did OFM indicate that documentation establishing that Wainstein fell within the exception was presented, nor was such documentation attached to the Form. *See* Ex. M at ATF0946-947. The fact OFM ignored a requirement included directly on the Form 4473 itself suggests that OFM both had knowledge and purposefully disregarded or was plainly indifferent to that requirement.

Likewise, accurately maintaining acquisition and disposition records is one of the most basic obligations of an FFL and is critical to ATF's ability to trace firearms. OFM was aware of this obligation, as other firearms were correctly logged out. Still, OFM failed to timely and accurately record the disposition of firearms in three instances, including two instances when Romo himself— even with thirty years of experience in the business—took personal possession of firearms without logging them out. OFM's failure to accurately record those dispositions can only be attributed to plain indifference. Additionally, in the case of the third firearm, IOI Gray testified that OFM knew the

23

firearm might be missing, but had not taken the time to confirm its presence or absence, and a theft loss report had to be prepared. *See* Ex. E at ATF0628 ("At the time it was suspected that the missing firearm might be somewhere in the shop but it could not be located[.]"). To delay the filing of a theft loss report, or even a thorough search for a missing gun, demonstrates plain indifference to GCA procedures.

Lastly, it is a licensee's responsibility to ensure that all Firearm Transaction Records, or ATF Form 4473's, are accurately signed and dated. But Aronstein inaccurately recorded the transfer dates for two firearms—recording the firearms as transferred the same day OFM received "delay" responses from the National Instant Criminal Background Check System ("NICS"). As both transferees recertified their Form 4473 responses several days after, it is obvious OFM did not actually transfer the firearms on the date Aronstein printed.

Accordingly, ATF was authorized to revoke OFM's license based on any of six separate willful violations of the GCA.

## II.    OFM's contentions regarding the Enhanced Regulatory Enforcement Policy fail as a matter of law.

There is also no material dispute of fact that OFM's claims regarding ATF's Enhanced Regulatory Enforcement Policy or "Zero-Tolerance" policy (the "Policy") fail as a matter of law.

To begin, OFM's SAC does not articulate a claim challenging the Policy—it merely copy-pastes factual allegations from another complaint filed in the district of North Dakota. *Compare* SAC ¶¶ 26-160 *with* Compl. ¶¶ 22-146, Morehouse Enters., LLC v. ATF, No. 3:23-cv-129 (D.N.D. July 11, 2023) (ECF No. 1). The *Morehouse* court dismissed that complaint in its entirety on October 8, 2024, for lack of final agency action, and it also noted that the Policy was consistent with the GCA's grant of discretion and did not implicate the Second Amendment. *See Morehouse Enters. LLC v. ATF*, ---F. Supp. 3d---, 2024 WL 5063388, at *5-*7 (D.N.D. Oct. 8, 2024), *appeal filed*, No. 24-3200 (8th Cir.).

OFM has not explained how the Policy has harmed OFM or why that Policy is unlawful, but in any event, the Policy accords with the Administrative Procedure Act, the GCA and the Constitution.

### A.    OFM lacks standing to challenge the Policy.

To challenge a particular policy, a plaintiff must have "a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). "To establish standing, '[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Denning v. Bond Pharmacy Inc.*, 50 F.4th 445, 450 (5th Cir. 2022) (alteration in original) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

OFM lacks standing to challenge the Policy as implemented through the AAP because any injury it has suffered is neither traceable to the AAP, nor likely to be redressed by a favorable decision. The GCA provides for the revocation of a federal firearms license for any single willful violation. *See* 18 U.S.C. § 923(e); *Fairmont Cash Mgmt.*, 858 F.3d at 362 ("A single willful violation authorizes the ATF to revoke the violator's FFL, regardless how severe, though the frequency and severity of the violations can be relevant to willfulness."). OFM has not challenged the validity of this statutory provision, argued that any of the Policy's five identified violations themselves are unlawful, or asserted that any of the violations for which OFM's license was revoked were unlawful. Therefore, even if this Court were to declare unlawful and enjoin the AAP, ATF's revocation would still be supported by any of the violations of the GCA and its implementing regulations described in the final notice of revocation. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412–413 (2013) (holding plaintiffs lacked standing to challenge one mode of surveillance when many other modes of surveillance were available to the government under separate legal authorities). Accordingly, any relief with respect to the AAP would not remedy OFM's purported injury, and it lacks standing to sue.

25

**B.        ATF enforcement decisions are committed to agency discretion by law.**

Judicial review of the AAP is also not available because ATF's enforcement decisions are committed to agency discretion by law. *See Morehouse Enters., LLC v. ATF*, No. 3:23-cv-129, 2024 WL 708954, at *7–8 (D.N.D. Jan. 2, 2024). 5 U.S.C. § 701(a) precludes judicial review of agency action when that action "is committed to agency discretion by law." "[W]hether to institute an enforcement action" is one type of agency action that courts have "traditionally left to agency discretion." *Ngure v. Ashcroft*, 367 F.3d 975, 982 (8th Cir. 2004) (citation omitted); *see also Heckler v. Chaney*, 470 U.S. 821 (1985). Agency enforcement policy often involves a "complicated balancing of a number of factors," and an "agency is far better equipped than the courts to deal with the many variables involved." *Heckler*, 470 U.S. at 831–32. Additionally, some statutes may be "drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id.* at 830.

The AAP is an internal guidance document setting forth ATF's enforcement priorities and is therefore not subject to judicial review. *See Morehouse*, 2024 WL 708954, at *8 ("Most of the AAP concerns enforcement priorities."); *see, e.g.*, Ex. C, ATF-O05370.1F, at ATF0527 ("This order provides fair and consistent guidelines for administrative remedies for violations disclosed relative to inspections of [FFLs]."). Although the GCA permits ATF to revoke a firearms license for any willful violation, given the sheer number of FFLs and ATF's limited inspection and enforcement resources, ATF does not and cannot seek revocation for every willful violation that occurs. Instead, ATF prioritizes the enforcement of willful violations that "directly affect public safety and ATF's ability to trace firearms recovered in violent crimes." Ex. C at ATF0529. To that end, the AAP "establishes a unified plan of action for resolution of violations through administrative action," and "groups . . . violations into categories for which specific administrative actions are recommended." Ex. C at ATF0528. The AAP identifies willful violations for which revocation is the "assumed" action because such violations directly affect public safety. Ex. C at ATF0529. But the AAP also specifies violations

26

for which a warning letter or a warning conference are appropriate actions. Ex. C at ATF0530-532. The AAP is therefore precisely the type of agency policy for which judicial review is precluded, as it reflects ATF's balancing of multiple factors in determining how to enforce the GCA. *See United States v. Texas*, 599 U.S. 670, 680 (2023) ("[F]ederal courts are generally not the proper forum for resolving claims that the Executive Branch should make more arrests or bring more prosecutions.").

Additionally, the GCA provides this Court with no "meaningful standard against which to judge [ATF's] exercise of" enforcement discretion. *Heckler*, 470 U.S. at 830. The statute simply states that ATF "*may*" revoke a firearms license for any willful violation. *See* 18 U.S.C. § 923(e) (emphasis added); *see also Fairmont Cash Mgmt.*, 858 F.3d at 362. The GCA does not specify willful violations for which revocation is definitely appropriate, nor does it identify willful violations for which revocation is not appropriate. The statute is "drawn in such broad terms that . . . there is no law to apply." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (citation omitted). As Congress did not specify which, if any, willful violations of the GCA to prioritize (or deprioritize), it is within ATF's discretion to make such determinations, and that discretion is not subject to judicial review.

C.     **OFM has not challenged a reviewable final agency action.**

Review is further precluded because the AAP is not final agency action.[8] *See Morehouse*, 2024 WL 708954, at *8–9; *see also* 5 U.S.C. § 704; *U.S. Army Corps. of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016). Agency action is final when it "mark[s] the consummation of the agency's decisionmaking process," and is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted).

The AAP is a general statement of policy that merely sets forth ATF's enforcement priorities

---

[8] To the extent the SAC challenges any other aspect of ATF's practices with respect to the Policy, such as ATF's use of the Spartan case management system, it also fails to challenge any reviewable final agency action. *See, e.g.*, SAC ¶¶ 70–78.

and is not reviewable final agency action. The AAP does not revoke any federal firearms licenses, nor does it determine the rights or obligations of any FFL. *See generally* Ex. C. Indeed, no legal consequences flow from it, as the GCA itself subjects FFLs to license revocation for any willful violation. *Fairmont Cash Mgmt.*, 858 F.3d at 362. The AAP does not expand or contract that liability, nor compel additional action or prohibit otherwise lawful action on the part of FFLs. Instead, the AAP simply sets forth how ATF will exercise its enforcement discretion. The ineffectiveness of any court-ordered remedy only demonstrates that the AAP is not final agency action. *See supra* p. 25. Even if this Court enjoined the AAP, ATF could still exercise its statutory authority to revoke a license for any willful violation of the GCA, including the five identified by the AAP. The AAP thus has no "actual legal effect . . . on regulated entities," and all obligations flow from the statute. *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014); *Texas v. United States*, 809 F.3d 134, 170–71 (5th Cir. 2015) (same).

### D. ATF's Policy is not contrary to the GCA.

At bottom, OFM's only argument that the AAP is unlawful centers on the notion that the AAP has redefined the GCA's requirement that violations be "willful" to support revocation.[9] *See, e.g.*, SAC ¶¶ 113-132. But that's not true, as demonstrated by the text of the AAP.

The AAP specifically states that "ATF must establish willfulness to proceed with revocation under 18 U.S.C. § 923(e)." Ex. C at ATF0532. There is no qualification to this statement, and it appears at the top of the section titled, "Revocation Under 18 U.S.C. § 923(e)," confirming that it applies to all license revocations. Ex. C at ATF0532. This alone disposes of OFM's allegation that the AAP somehow eliminates the GCA's willfulness requirement. But if more were needed, even the portions

---

[9] Although the SAC references the Second Amendment in passing, it does not contain sufficient factual allegations or legal argument to give Defendants adequate notice of any Second Amendment claim or the grounds upon which it would rest. *See 7 Santini Brothers Trucking, Inc. v. City Ocean Int'l Inc.*, 2024 WL 2836274, at *2 (S.D. Tex. June 4, 2024).

of the AAP referencing the challenged Policy affirmatively reiterate that ATF must demonstrate willfulness. *See, e.g.*, Ex. C at ATF0529 ("ATF has zero tolerance for willful violations that can directly affect public safety and ATF's ability to trace firearms recovered in violent crime."); Ex. C at ATF0533 ("[T]he below five items merit revocation of the license if committed willfully unless extraordinary circumstances exist."). Further, the term willful and its derivatives appear over twenty times in the AAP, and nowhere does the AAP suggest that revocation is permitted for unintentional or inadvertent violations. *See generally* Ex. C. There is thus no support for the notion that, through the AAP, ATF has somehow eliminated the willfulness requirement. *See also* Ex. U, ATF Decl.

Nor has ATF somehow redefined the term "willful" in a way that subverts the statutory requirement. Although the GCA does not define the term "willful," *see* 18 U.S.C. § 923(e), the AAP defines it in the same manner circuit courts applying the GCA have: "[t]he term willful means a purposeful disregard of, or a plain indifference to, or reckless disregard of a known legal obligation." Ex. C at ATF0528; *compare with Fairmont Cash Mgmt.,* 858 F.3d at 362 ("A license holder commits a willful violation under § 923 if the licensee knew of his legal obligation and purposefully disregarded or was plainly indifferent to the . . . requirements."); *see also On Target Sporting Goods, Inc. v. Att'y Gen. of the U.S.*, 472 F.3d 572, 575 (8th Cir. 2007) (defining willfulness in the GCA context as where "a licensee knew of its legal obligation and purposefully disregarded or was plainly indifferent to" that obligation (citation omitted)); *Willingham Sports, Inc. v. ATF*, 415 F.3d 1274, 1276–77 (11th Cir. 2005) (per curiam) ("We agree with [five other circuit courts] that a showing of purposeful disregard of or plain indifference to the laws and regulations imposed on firearms dealers shows willfulness for purposes of [the GCA].").

Further, the ways that ATF can prove the "knowledge element" of willfulness under the AAP are supported by both common sense and prior judicial interpretations. For instance, if an FFL previously committed a violation prompting ATF to explain the underlying legal obligation to that

29

FFL, it makes perfect sense to determine later that the FFL had knowledge of that obligation. *See* Ex. C at ATF0532–33. Likewise, that an FFL has substantial experience or has previously complied with the specific regulation at issue similarly supports that the FFL had knowledge of a particular legal obligation. Ex. C at ATF0533. Importantly, courts have considered factors similar to those listed in the AAP in determining that an FFL had knowledge of its legal obligations. *Compare* Ex. C at ATF0532–33, *with On Target*, 472 F.3d at 572 (establishing knowledge through licensee's repeated failure to follow GCA); *CEW Props.*, 979 F.3d at 1271 (considering licensee's training and acknowledgment of training, quantity and seriousness of violations, occasional adherence to regulatory obligations, length of time license had been held, and licensee's statements to investigators in finding willfulness); *Best Loan Co. v. Herbert*, 601 F. Supp. 2d 749, 754–55 (E.D. Va. 2009) ("Best Loan signed an Acknowledgment of Federal Firearms Regulations, demonstrating that the company understood the regulatory requirements applicable to firearms dealing."). And in *Morehouse*, another district court observed that the six options the AAP identifies as ways to establish knowledge "appear to be supported by prior judicial interpretation[s] of the GCA's willfulness requirement." 2024 WL 708954, at *10 (citing cases). If anything, the hearing, final agency decision, and legal briefing in this matter demonstrate that ATF continues to apply a definition of willfulness consistent with judicial interpretations and past practices.

For all these reasons, the AAP is entirely consistent with the text and requirements of the GCA.

## III.    DIO James properly served as the presiding officer at ATF's revocation hearing.

OFM also challenges its revocation on the grounds that DIO Tanarra James served as the hearing officer for OFM's revocation hearing. *See* SAC ¶¶ 302–322. OFM contends that this runs contrary to the hearing procedures set forth in a 2010 General Notice and is a conflict of interest

because DIO James issued the initial Notice of Revocation in this matter and conducted the hearing in the *Crusader* case. None of these arguments persuades.

Although OFM cites a 2010 General Notice regarding revocation hearing procedures, that Notice is not a binding agency rule, nor does it reflect ATF's current revocation procedures. Regulations regarding ATF revocation proceedings are set out at 27 C.F.R. §§ 478.71–78, and the 2010 General Notice procedures are no longer operative. Instead, the Explanation of Hearing Process attached to OFM's Initial Notice of Revocation sets forth the current procedures. *See* Ex. B at ATF0545-546. Those procedures provide that the "DIO will preside over the hearing," and "[a]fter reviewing the transcript and all evidence submitted at the hearing, the DIO will make the final licensing decision for ATF." Ex. B at ATF0546. Thus, OFM's revocation proceedings comport with current procedure.

DIO James also has no conflict of interest that runs afoul of due process. "A decision maker is constitutionally unacceptable if: 1) he has a direct personal, substantial and pecuniary interest in the outcome of the case; 2) he has been the target of personal abuse or criticism from the party before him; or 3) he has a dual role of investigating and adjudicating disputes and complaints." *Public Citizen, Inc. v. Bomer*, 115 F. Supp. 2d 743, 745 (W.D. Tex. 2000) (citing *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1052 (5th Cir. 1997)); *see also Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008).

None of these circumstances is applicable here. First, merely because James is the DIO for the Houston Field Division does not mean she has a personal or pecuniary interest in the outcome of the case. *See also Public Citizen*, 115 F. Supp. 2d at 745 ("[T]he party challenging the impartiality of a judge must also rebut two strong presumptions: 1) the honesty and integrity of the decision makers and 2) the decisions made affecting the public are done in the public interest."). But apart from citing her position, OFM alleges no facts demonstrating she has such an interest. *See, e.g.*, SAC ¶ 321. Nor is seeking statutorily-provided federal court review of her final determinations "personal abuse or

31

criticism" that would render her impartial, *see* SAC ¶ 321, just as a district judge whose decision is appealed is not conflicted off the case at a later stage. *See Lewis v. Lumpkin*, 844 F. App'x 781, 782 (5th Cir. 2021) ("The Court's caselaw involving judicial bias based on a party's personal attacks against the judge typically consist of cases in which the judge found the party to be in contempt of court and then presided over the contempt trial."). Lastly, DIO James did not serve in dual roles. Though she issued the initial Notice of Revocation, she was not the investigating officer—that was IOI Gray and IOI Mata. *See* Ex. A at ATF0706-712 (describing IOI Gray and IOI Mata's investigations); *see also Crusader Gun Grp.*, 118 F.4th at 654 (holding that DIO James role as the hearing officer did not offend due process because "James did not serve as the investigative officer"). In sum, OFM has provided no specific allegations or evidence to support that DIO James was biased, nor that OFM was accordingly prejudiced by her serving as the ATF hearing officer.

## IV.   OFM's license revocation/denial of renewal accords with due process.

OFM otherwise contends that ATF's hearing process violates due process because ATF's hearing process is informal and occurs outside the APA. *See* SAC ¶¶ 323–340.

"The mere existence of the APA does not itself impose a duty upon federal administrative agencies to hold formal, adversarial hearings," and "APA adjudication requirements do not attach to every agency hearing." *Arwady Hand Truck Sales, Inc. v. Vander Werf*, 507 F. Supp. 2d 754, 759 (S.D. Tex. 2007). Instead, "an agency must conduct its hearings in accordance with the APA's formal adjudication procedures when the statute explicitly calls for a 'hearing on the record.'" *Id.* at 758. "Neither the GCA nor the C.F.R. calls for a 'hearing on the record,'" and rather, both "simply state that a person whose application for a federal firearms license is denied or whose license is revoked is entitled to a 'hearing' upon request." *Id.* at 759–60. Therefore, courts have continually concluded that ATF revocation hearings are not formal adversarial hearings to which APA standards would apply. *Id.*

32

at 760; *see also Crusader Gun Grp.*, 2023 WL 6194039, at *3 n.2; *Shaffer v. Holder*, 2010 WL 1408829, at *14–15 (M.D. Tenn. Mar. 30, 2010).

ATF otherwise provided OFM with constitutionally "adequate due process," namely, "written notice of the reasons for the [revocation], a hearing to challenge the [revocation], copies of ATF's evidence in advance of the hearing, and the opportunity to have legal representation and present evidence and cross-examine ATF's witnesses during the hearing." *Crusader Gun Grp.*, 118 F.4th at 654; *see also Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976) (administrative procedures often comport with due process where there is notice, opportunity to be heard, and subsequent judicial review). Courts have consistently concluded that ATF hearing procedures conducted in the ordinary course comport with due process. *See Fulkerson v. Sessions*, 2018 WL 3726278, at *3 (6th Cir. Mar. 23, 2018) ("Courts that have examined ATF's hearing process for license revocations and denials have generally found the process to be constitutionally sufficient under the *Mathews* balancing test." (citing cases)); *Weaver v. Harris*, 486 F. App'x 503, 506 (5th Cir. 2012) (finding no due process violation with ATF's revocation procedures); *Fulkerson v. Lynch*, 261 F. Supp. 3d 779, 786 (W.D. Ky. 2017) ("Petitioner received due process in accordance with the GCA and its regulations through an agency hearing to review the denial of their application for the FFL."); *Townson v. Garland*, 2022 WL17587259, at *7–8 (S.D. Ala. Nov. 17, 2022). And the administrative record here demonstrates that OFM received adequate due process. OFM had the opportunity to present exhibits to support its defense. *See* ATF0985-1692, ECF Nos. 60-10 to 60-14. It also had the opportunity to be represented by counsel, present witnesses, and cross-examine the government's witnesses. *See* Ex. E at ATF0578-702.

OFM has not cited any specific issues with the hearing process that suggest that it was constitutionally deficient, and this claim should be denied.

33

## V.   OFM has no right to a trial by jury.

In its SAC, for the first time in this litigation, OFM requests a jury trial. *See* SAC ¶ 353. This request must be denied.

It appears OFM's request is premised on the Supreme Court's recent decision in *SEC v. Jarkesy*, 603 U.S. 109 (2024), but that decision does not support that the Seventh Amendment is implicated here. *Jarkesy* explained that the Seventh Amendment right to trial by jury only "extends to a particular statutory claim if the claim is 'legal in nature.'" *Id.* at 122 (quoting *Granfinanciera, S.A. v. Nordbert*, 492 U.S. 33, 53 (1989)). Determination of whether a suit is "legal in nature" requires consideration of two factors: "the cause of action and the remedy it provides," with remedy being the "more important" consideration. *Id.* at 122–23 (citation omitted). Examining these factors, *Jarkesy* found the SEC's securities fraud action seeking civil penalties was analogous to common law fraud actions historically brought in the courts of law, and civil monetary penalties were analogous to monetary damages—"the prototypical common law remedy." *Id.* at 123. Accordingly, the Seventh Amendment was implicated.

By contrast, the remedy ATF seeks—the revocation of OFM's license—is injunctive in nature, as it requires only that OFM cease dealing in firearms. ATF is not seeking civil monetary penalties, or any form of money payment. "It is settled law that the Seventh Amendment does not apply" to "suits seeking only injunctive relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999) (citation omitted); *In re Abbott*, 117 F.4th 729, 737, 739–41 (5th Cir. 2024) ("Texas has failed to establish that the injunctive relief that the United States seeks under § 406 of the RHA is legal in nature such that it affords a right to a jury trial."); *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 95 (2d Cir. 1978) ("In 1791, when the Seventh Amendment became effective, injunctions, both in England and in this country, were the business of the courts of equity, not of courts of common law."). Additionally, in *Jarkesy*, the Court stressed the importance of Congress's decision to incorporate

34

elements of common law fraud into the relevant securities laws, 603 U.S. at 125–26, but no such connection to a common law cause of action is apparent here.

Alternatively, the GCA's federal firearms licensing scheme involves the public rights doctrine. "Under [the public rights] exception, Congress may assign the matter for decision to an agency without a jury, consistent with the Seventh Amendment." *Id.* at 127. The GCA's framework "serves a public purpose as an integral part of a program safeguarding the public health," and therefore "Congress has the power" to "condition issuance of registration or licenses on compliance with agency procedures." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 589 (1985) (rejecting Article III challenge to federal pesticide registration scheme). And such licensing procedures can properly be resolved "with limited involvement by the Article III judiciary." *Id.* at 594; *see also Den ex dem. Murray v. Hoboken Land & Improv. Co.*, 59 U.S. 272 (1985); *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325 (2018); *Jarkesy*, 603 U.S. at 130.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for summary judgment.


Dated: January 6, 2025　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　BRIAN M. BOYNTON
　　　　　　　　　　　　　　　　　　　　　　　Principal Deputy Assistant Attorney General

　　　　　　　　　　　　　　　　　　　　　　　LESLEY FARBY
　　　　　　　　　　　　　　　　　　　　　　　Deputy Branch Director

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Taylor Pitz*
　　　　　　　　　　　　　　　　　　　　　　　TAYLOR PITZ (CA Bar No. 332080)
　　　　　　　　　　　　　　　　　　　　　　　Trial Attorney
　　　　　　　　　　　　　　　　　　　　　　　U.S. Department of Justice
　　　　　　　　　　　　　　　　　　　　　　　Civil Division, Federal Programs Branch
　　　　　　　　　　　　　　　　　　　　　　　1100 L Street NW
　　　　　　　　　　　　　　　　　　　　　　　Washington, DC 20005
　　　　　　　　　　　　　　　　　　　　　　　Phone: (202) 305-5200
　　　　　　　　　　　　　　　　　　　　　　　Email: Taylor.N.Pitz@usdoj.gov

*/s/ Myra Siddiqui*
Myra Siddiqui
Assistant United States Attorney
Texas Bar No. 24106434
Southern District No. 3257790
1000 Louisiana, Suite 2300
Houston, Texas 77002
Phone: (713) 567-9600
E-mail: myra.siddiqui@usdoj.gov

*Attorneys for Defendants*

36

## CERTIFICATE OF SERVICE

On January 6, 2025, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Taylor Pitz*
Trial Attorney
U.S. Department of Justice

37