**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| BENCIVENGA CORPORATION D/B/A OFM CORPORATION<br><br>*Plaintiff,*<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, *et al.,*<br><br>*Defendants.* | No. 4:23-CV-3887 |

**DECLARATION IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

I, Curtis Gilbert, of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), declare that the following statements are true and correct to the best of my knowledge and belief, and that they are based on my personal knowledge as well as information provided to me in the ordinary course of my duties. This declaration is submitted in support of Defendants' Motion for Summary Judgment ("Defs.' MSJ").

1.      I have been employed at ATF since 1988 and I am currently the Deputy Assistant Director of Industry Operations, having served in this role since March 2022. I oversee Industry Operations, which is responsible for the enforcement of ATF's regulatory mission and includes the licensing of persons engaging in the firearms and explosives business and conducting inspections of licensees to ensure they are complying with all applicable laws and regulations. As Deputy Assistant Director, I also ensure that ATF regulatory policy is enforced consistently across the United States. I monitor and review every potential revocation of a federal firearms license across the country. I am familiar with

1

ATF's firearms compliance inspection process as well as ATF's process for seeking further administrative action, including license revocation.

2.      Federal firearms licensees have been referred to as the "princip[al] agent of federal enforcement." *Huddleston v. United States*, 415 U.S. 814, 824 (1974). The ATF inspection process is vital to the agency's mission, to ensure that federal firearms licensees comply with federal, state, and local law, in order to maintain accurate records for the tracing of firearms recovered at crime scenes and to combat the diversion of firearms to those prohibited from possessing them.

3.      ATF-Order 5370.1F was the version of ATF's Federal Firearms Administrative Action Policy and Procedures ("AAP"), ATF's internal guidance document, at the time that ATF revoked Plaintiff OFM's federal firearms license. The AAP sets forth general policy guidelines for administrative action for federal firearms licensees. Specifically, the document is intended to provide fair and consistent guidance to assist ATF field personnel and other officials as they conduct compliance inspections and take appropriate administrative actions.

**Revocation Procedures**

4.      ATF-O-5370.1F provides that ATF must establish willfulness to proceed with revocation under 18 U.S.C. 923(e). The AAP establishes a unified plan of action for addressing violations through specific recommended administrative actions. While acknowledging that each inspection has unique and sometimes complex circumstances, the AAP provides that, absent extraordinary circumstances, ATF will initiate revocation of a federal firearms license when a licensee willfully commits one of five identified violations of the Gun Control Act ("GCA"), thus implementing what has been referred to as ATF's "enhanced regulatory enforcement policy" or "zero-tolerance policy." These five violations specified under the policy can directly impact public safety and law enforcement's ability to trace firearms recovered in violent crimes and include: (1) transferring a firearm to a prohibited person; (2) failing to run a required background check; (3) falsifying records or making false statements; (4) failing

2

to respond to an ATF trace request; and (5) refusing to permit ATF to conduct an inspection in violation of the law. *See* AAP at 5–7.

5.      All federal firearms license revocation proceedings advance in two stages: (1) initial notice of revocation, and (2) if requested, a hearing and final decision. If ATF reaches a final decision to revoke, a final notice of revocation will be issued; an initial notice of revocation is thus not a per se revocation.

6.      At the first stage, if ATF detects one of the five specified violations during an inspection, and there is evidence of willfulness, absent extraordinary circumstances, the agency will issue a notice of revocation (ATF Form 4500) to the licensee. The notice identifies the violations that are the basis for the agency's decision to pursue revocation and it informs the licensee that it has a right to request a hearing with the Director, Industry Operations ("DIO") of the applicable ATF field division. Alternatively at this stage, if ATF detects one of the five specified violations but also identifies one or more extraordinary circumstances, and if ATF determines that further administrative action is not warranted, ATF will not issue an initial notice of revocation. The IOI makes the initial recommendation as to any further action, and the IOI may recommend no further action, a warning letter, a warning conference, or an initial notice of revocation. The IOI submits a recommendation and the inspection information to their Area Supervisor ("AS"), and when the area supervisor recommends issuing a notice of revocation or an alternate to revocation per the AAP, the DIO and I will also review that recommendation. Only after the relevant ATF personnel review an IOI's recommendation will a DIO send any notice of revocation to a licensee.

7.      At the second stage, if requested by the licensee, ATF will hold an administrative hearing where the DIO serves as the hearing officer. At the hearing, the licensee can be represented by an attorney (or non-attorney) and may present facts, such as evidence, testimony, and exhibits, and arguments to challenge the existence and/or willfulness of the violations set forth in the notice of revocation. The DIO then makes a final determination as to whether any violations were willful and

whether revocation is authorized. As set forth in the AAP, the DIO *must* conclude that the administrative record establishes by a preponderance of the evidence that one or more violations were willful to sustain a final revocation decision, and following a hearing ATF will only send a final notice of revocation (ATF Form 5300.13) if the DIO decides that the violations at issue were willful.

8.      As required by the GCA, to issue a final notice of revocation, ATF must find that the violation was willful. AAP at 6. The AAP defines willfulness in the same manner courts have: "[t]he term willful means a purposeful disregard of, or a plain indifference to, or reckless disregard of a known legal obligation." *Id.* at 2. The AAP specifies the types of evidence that may establish that a licensee knew of a legal obligation. *See id.* at 6–7. For example, at the close of each inspection, including at the close of an initial application inspection, the licensee signs an Acknowledgement of Federal Firearms Regulations, which states the licensee has been apprised of and understands its requirements, including, among other things, recordkeeping and background check requirements, ATF's right of entry and examination, and responding to firearms trace requests. Where violations are subsequently detected, signed acknowledgment forms may indicate that the licensee had knowledge of his or her legal obligations; however, to establish willfulness ATF must also show that a licensee purposefully disregarded, was plainly indifferent, or recklessly disregarded that known obligation.

9.      ATF-O5370.1F's language stating that ATF "will revoke a federal firearms license, absent extraordinary circumstances on initial violations, if those violations inherently demonstrate willfulness," does not abrogate its willfulness requirement. AAP at 6. Willfulness must still be shown with regards to any violation serving as the basis of revocation. *See id.* at 2, 6. The "inherently demonstrate" language simply means that ATF need not establish a *history* of prior violations to demonstrate the willfulness of a violation. It does not mean that ATF will revoke a license upon the mere finding of one of these five violations. This language does not supersede the separate language requiring both the knowledge and purposeful disregard/plain indifference/reckless disregard prongs

of the willfulness requirement, and both prongs must be shown by a preponderance of the evidence for ATF to proceed with a final revocation.

10.     After conclusion of the hearing and considering all the licensee's relevant presentations, the DIO will make a final determination as to the willfulness of any violation and whether revocation is authorized. As a matter of policy, the DIO *must* conclude that the administrative record establishes by a preponderance of the evidence that one or more violations were willful to sustain a final revocation decision. ATF with either send a final notice of revocation to the licensee with a summary of the findings and legal conclusions that warrant revocation, or ATF will notify the licensee of the determination not to revoke in writing.

Executed on January 2, 2025

_____